RIPON KNITTING WORKS, Respondent, vs. RAILWAY EXPRESS AGENCY, INC., Appellant.[1]

*January 13—April 5, 1932.*

[1] Paragraph 1 embodies portions of the American Law Institute Restatement of the Law of Agency (Tentative Draft No. 5, pp. 119, 121), sanctioned by the court.

For the appellant there were briefs by *T. L. Doyle,* attorney, and *Cecilia Doyle* and *Allan L. Edgarton* of counsel, all of Fond du Lac, and oral argument by *Mr. Doyle.*

For the respondent there were briefs by *Thompsons, Gruenewald & Frye* of Oshkosh, and oral argument by *Miriam Frye* and *A. H. Gruenewald.*

The following opinion was filed February 9, 1932:

ROSENBERRY, C. J. The facts in this case disclose a situation with which courts are often obliged to deal, where one or the other of two innocent parties must suffer by reason of

the wrongful acts of a third. The defendant believed, not without reason, that Lambert was an honest and faithful employee and worthy of its trust and confidence. The plaintiff dealt with the defendant through Lambert upon the same assumption. Both parties trusted him, each relied upon his honesty and probity, and each has been deceived and wronged. As to the factual situation there is practically no dispute. The plaintiff in effect accepted the statement of the amount of the defalcation as made by defendant's auditor. It is not denied that Lambert was the agent of the defendant authorized to deliver goods, to collect the charges thereon and receipt therefor. The defendant argues that the fraudulent misrepresentations made by Lambert and the acts of embezzlement committed by him were not done in furtherance of the business of the defendant company, were not within the scope of his employment or within his apparent authority, and that the defendant is not estopped to deny that Lambert had authority in the premises. It seems too plain for argument that what Lambert did he did within the scope of his authority as a delivery and collection agent of the defendant. It is true that the defendant never expressly authorized Lambert to make fraudulent misrepresentations. It is equally true that Lambert made these for his own benefit and that the defendant did not profit thereby. If these facts constituted a defense in law, no principal would ever be liable for fraudulent misrepresentations unless the principal had authorized or ratified it. Lambert's authority was to collect express charges. When Miss Solverson paid him money and took the receipt of the express company therefor, he was acting precisely in all respects as if authorized to do so, and, relying upon the misrepresentations, the money was paid to him and the company's receipt taken therefor. In this respect the case is ruled by *Zummach v. Polasek,* 199 Wis. 529, 227 N. W. 33.

That earlier cases may be found upon the authority of which the plaintiff should be denied a recovery cannot be doubted. The development of the law is quite well disclosed by a comparison of *Friedlander v. Texas & Pac. R. Co.* 130 U. S. 416, 9 Sup. Ct. 570, with *Gleason v. Seaboard Air Line R. Co.* 278 U. S. 349, 49 Sup. Ct. 161, in which case the judgment of the circuit court of appeals, based on the *Friedlander Case*, was reversed. In the *Gleason Case* an agent of the railroad company forged a bill of lading and draft, notified the plaintiff that the goods had arrived and so secured payment of the draft by the plaintiff, who sued the railroad company for the deceit. The circuit court of appeals reversed the judgment of the district court on the ground that an employer is not liable for the false statements of an agent made solely to effect a fraudulent design for his own benefit and not in furtherance of the employer's business, the court saying, "Under the general rule prevailing in the federal courts, an employer is not liable for such conduct of his employee." In reversing the judgment the supreme court of the United States said:

"We think that the restriction of the vicarious liability of the principal adopted by the court below is supported no more by reason than by authority. Undoubtedly formal logic may find something to criticise in a rule which fastens on the principal liability for the acts of his agent, done without the principal's knowledge or consent and to which his own negligence has not contributed. But few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own. . . .

"Granted the validity and general application of the rule itself, there would seem to be no more reason for creating an exception to it because of the agent's secret purpose to benefit himself by his breach of duty than in any other case where his default is actuated by negligence or sinister motives. In either case the injury to him who deals with the agent, his relationship and that of the principal to the agent's

wrongful act, and the economic consequence of it to the principal in the conduct of whose business the wrong is committed, are the same. . . . We think that the *Friedlander Case* should be overruled so far as it supports such an exception and that the judgment of the court of appeals should be reversed."

As the court pointed out, in cases of this kind care must be exercised to distinguish between authority to commit a fraudulent act and authority to transact business in the course of which the fraudulent act is committed. All of the cases holding a principal liable for the torts of his agent committed in the course of transacting the principal's business, where the acts are not authorized, involve holding a principal liable without fault on his part, whether it be for assault and battery, for fraudulent misrepresentation, for negligence, deceit, or other wrongs.

The Restatement of the Law of Agency lays down the following propositions:

"A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons, is subject to liability to such third persons for such fraud. (Sec. 485.) A person who would be liable to another under the rules of sec. 485 for injury caused by one who is apparently acting on his account is not relieved from liability by the fact that the actor is acting entirely for his own purposes, unless the other has notice of this." (Sec. 486.)

*Berkovitz v. Morton-Gregson Co.* 112 Neb. 154, 198 N. W. 868, 33 A. L. R. 85, involved the same question. In that case an agent fraudulently altered the totals in the statements of accounts due which he was authorized to collect so as to show larger amounts than were actually due, secured the money upon these altered statements, and converted the excess to his own use. The principal was held liable. See note to above case and cases cited.

The defendant contends that under all the circumstances of this case the plaintiff had no right to rely upon the false statements made by Lambert and that it was negligent in the method of conducting its business and that its negligence caused the loss. We should probably be led astray if we used the term *negligence* in this connection in the same sense in which it is used in cases where the question at issue is liability for personal injuries. Defendant's claim is really summed up in the statement that under all the circumstances the plaintiff had no right to rely upon the fraudulent misrepresentations. In this connection it is pointed out that the defendant is required to file its tariffs; that it was at all times within the plaintiff's power easily to ascertain the correct amount of charges; that it did not for a long period of time discover the overcharges; that the defendant was put off its guard; that the plaintiff had the means of knowledge from which it might by examination have ascertained the correct amount, it being within the authority of Miss Solverson to demand of Lambert that he exhibit the delivery sheets.

It is apparent that the plaintiff had no actual knowledge that Lambert was making fraudulent misrepresentations to it. The claim is that by exercising a greater degree of care in its method of transacting business the plaintiff might have required Lambert to exhibit the delivery sheets for every consignment, and that by checking these delivery sheets against the receipts the discrepancy would have been discovered. This is no doubt another case of hindsight. After the event it is easy to see that a number of things would have saved the situation. The question is, In the ordinary course of business as it was transacted between the plaintiff and defendant by their respective agents, did the plaintiff have a right to rely upon the situation created by the acts of Lambert in the course of the exercise of an undoubted authority, or was it obliged to go farther, suspect Lambert of a mis-

statement, and require him to adduce evidence in the shape of the delivery sheets? The general rule is that whether or not one has a right to rely upon false representations made to him is a question of fact. Where a person was induced to accept a $6,000 mortgage in exchange for property upon the representation that it was "as good as gold," as "good as cash," and it appeared that the representations were false and that the farm upon which the mortgage was a lien was worth only $4,400, a judgment in favor of the plaintiff was sustained. *Wolfgram v. Sternberg,* 193 Wis. 343, 214 N. W. 501.

Of course a person may not close his eyes to what is perfectly obvious, nor may he accept as true statements which are false upon their face, but a person is not required to meet every positive statement with incredulity nor to make a search to ascertain whether it is true or false. *Jacobsen v. Whitely,* 138 Wis. 434, 437, 120 N. W. 285. In this case the court said, speaking by Mr. Justice Dodge:

"Courts will refuse to act for the relief of one claiming to have been misled by another's statements who blindly acts in disregard of knowledge of their falsity or with such opportunity that by the exercise of ordinary observation, not necessarily by search, he would have known. He may not close his eyes to what is obviously discoverable by him. (Citations.) It is in this sense only that opportunity to know the truth will prevent recovery for deceit. Whether the situation presents or fails to present such opportunity is usually a question of fact. The intelligence or acuteness of plaintiff is one important element. . . . Another, is the reliance reposed by the buyer on the seller by reason of acquaintance or confidence. These and many other considerations have proper effect in deciding whether the truth was obvious, as appears in the various cases already cited and very many others."

Having in mind the conditions under which modern business is conducted, it would certainly be going a very long

way to say that under the circumstances plaintiff's cashier did not have a right to rely upon the accuracy of the receipts tendered her on account of the moneys received by the defendant's agent. Lambert commenced work in 1921. His first act of dishonesty occurred apparently in 1924. For nearly three years he had come and gone on the defendant's business, and had built up confidence both on the part of his employer and the plaintiff in his honesty. Plaintiff paid knowing that any over or under charges when discovered would be adjusted. · Certainly it cannot be said as a matter of law that the plaintiff had no right to rely upon Lambert's false statements. Under the circumstances we may say that in our opinion the finding ·of the court in this respect is supported by the clear preponderance of the evidence. From his point of vantage as agent of the defendant, the dishonest employee devised a simple method of imposing upon the defendant's customer. He knew exactly from long observation what the course of business was and that Miss Solverson relied upon him. Knowing this, he made his plans accordingly. His first fraud may have been the result of an honest mistake. It could not have been honest, however, when he discovered the excess in his hands when he settled with the agent at the close of the day's work.

Some argument was made in an effort to excuse the defendant from liability on the ground that, the receiving clerk having signed the delivery sheet, the plaintiff was chargeable with notice of the amount due on the respective consignments and for that reason it should be held that plaintiff knew that Lambert's authority was limited to the collection of the amounts appearing upon the respective delivery sheets. To so hold would require the plaintiff to check every delivery sheet against the accompanying receipt. These receipts in the main were made out by Lambert; occasionally, in order to help out, they were made in the office. Whether they were

made by Lambert or in the office is not material, as Lambert was authorized to deliver them in either event. The receipts were not in the ordinary course of business exhibited with the delivery sheet when the consignment was turned over to the delivery clerk. When Lambert demanded payment it was not customary for him to exhibit the delivery sheet in connection with the receipt. The defendant had no copy of the receipt for the money. It had at its office the way-bill by means of which it kept track of the shipment, and the delivery sheet was returned to it signed by the customer when delivery was made. While the plaintiff may, upon a consideration of all the facts, be said to have had the means of knowledge, it did not in fact have knowledge, and, not having knowledge, it had no notice. So the question comes down to whether or not its failure to avail itself of the means of knowledge was such a default on its part as to excuse the defendant from liability. This is merely another way of saying that it had no right to rely upon the false statements made by Lambert. No matter which way it is said, the same conclusion follows. Confusion may arise if we use the term *notice* in one place as meaning knowledge, in another as meaning means of knowledge, and in another to say that a party is to be charged as if he had knowledge whether he had it or not. As Mr. Justice DODGE said, a party may not ignore the obvious; on the other hand, he is not required to make a search before accepting as true a representation made to him in the ordinary course of business. Where a purchaser relied upon false representations of the vendor as to boundaries, he was permitted to recover although he had in his possession an abstract of title with a plat which disclosed the true boundaries. *Castenholz v. Heller,* 82 Wis. 30, 51 N. W. 432. Buyer and seller deal at arm's length. The relation between a common carrier and its customers is one of mutual trust and confidence. The caution required of

plaintiff under the circumstances was much less than that required of the plaintiffs in the cases cited. But applying the stricter rule applicable to a buyer, the plaintiff was well within it. We find no reversible error.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 5, 1932.