BILLUPS PETROLEUM CO. *v.* HARDIN'S BAKERIES CORP.

Mar. 23, 1953

No. 38678 25 Adv. S. 1 63 So. 2d 543

*Richard A. Billups, Jr.,* for appellant.

26

*Flowers, Brown & Burns,* for appellee.

KYLE, J.

This case is before us on appeal by the Billups Petroleum Company, a corporation, plaintiff in the court below, from a judgment of the circuit court of Hinds County affirming a judgment of the county court rendered in favor of Hardin's Bakeries Corporation, defendant, in an action for damages brought by the Billups Petroleum Company, as plaintiff, against the Hardin's Bakeries Corporation, defendant, on account of the wrongful and fraudulent collection of overcharges for

bread delivered by the defendant's sales agent to the plaintiff during the year 1950.

The case was tried before the county judge without a jury, and judgment was rendered against the plaintiff and in favor of the Hardin's Bakeries Corporation. Upon appeal to the circuit court the judgment of the county court was affirmed.

The facts developed on the trial were substantially as follows: The Billups Petroleum Company, appellant, was the owner and operator of a large gasoline service station located on Highway No. 80, near the corporate limits of the City of Jackson. During the month of May, 1950, the appellant opened a new cafe on the service station lot immediately adjoining the service station. About the time the cafe was opened Charles D. Saunders, the appellant's vice-president, went to the main office of the Hardin's Bakeries Corporation, appellee, in the City of Jackson, and made arrangements for the purchase of bread from the appellee corporation to be delivered at the appellant's cafe as needed. The appellee agreed to deliver to the appellant from the appellee's delivery truck each day such quantities of bread as the appellant desired to purchase; and it was understood that payment was to be made therefor in cash as the bread was delivered.

The appellant employed one Eddie Simon as manager of the cafe. Simon was authorized to place orders for such quantities of meat, milk, bread and other food articles and supplies as were needed from time to time to carry on the cafe business. The appellant's vice-president instructed Simon to check all deliveries of bread and other supplies brought to the cafe by salesmen. The manager was authorized to approve the sales tickets covering all purchases of supplies and the appellant's cashier at the service station was authorized to pay the same.

Regular deliveries of bread were made to the appellant's cafe by the appellee's salesman from the appellee's bread truck during the next succeeding several months. The cafe manager for a short time followed the instructions given to him by the appellant's vice-president and checked the bread deliveries that were made each day by the appellee's salesman. But after a time the cafe manager stopped checking the bread which was actually delivered by the bread salesman and permitted the salesman to enter the storeroom and replenish the bread supply without keeping watch over him. The invoices which the salesman presented after the bread had been placed in the storeroom were approved by the manager, or some other employee in the cafe, if the manager was not present, and were paid by the appellant's cashier at the service station.

After the cafe had been in operation for a period of about four months, the appellant employed S. E. Gaston, an expert accountant, who had had several years' experience in making studies of food costs and other costs of operations of cafes, to make an analysis and study of food costs and other costs of operations in the appellant's cafe. Gaston made a preliminary check and audit of the business of the cafe for the period beginning in May and ending during the latter part of September and found that the amount of bread paid for was far in excess of the amount that should have been required during the time the cafe had been in operation. Gaston testified that he had learned from his study of operating costs of cafes that the cost of bread in cafes similar to the appellant's cafe amounted to approximately three per cent of the sales volume of the cafe.

On the morning of Ocober 6, 1950, an inventory of the bread supply on hand was taken before the appellee's bread truck arrived and a re-check of the bread supply was made immediately after the appellee's bread salesman had replenished the bread supply for the day, and

it was found that, although the bread salesman had charged and collected for 20 loaves of bread, 40 packages of rolls and 15 packages of buns, at a total cost price of $12.85, he had in fact actually delivered only 10 loaves of bread, the cost price of which was 24 cents each. The shortage was communicated to Hardin's Bakeries, and for a period of several days thereafter a supervisor from Hardin's Bakeries accompanied the sales agent in making his deliveries.

It was expressly stipulated in the record that, as to some of the items sold to the appellant during the period from October 2 to October 5, 1950, the Hardins Bakeries' records showed a smaller amount loaded on the truck than the amount shown on the tickets of sales to the appellant.

The deliveries of bread over a test period of several days immediately following the discovery of the salesman's overcharges showed bread used in the amount of $52.25, while cafe sales amounted to $1,735.70. The percentage ratio of bread used to sales volume was 2.9 per cent. Another test was made later covering the period from January 1 through June 1 of 1951, and that test reflected a percentage ratio of bread used to sales volume of 3.18 per cent. During the latter period there had been a 7.2 per cent increase in the cost of bread, with no increase in the retail sales price of food sold at the cafe. After making due allowance for this increase in the cost of bread, the percentage ratio of bread used to sales volume during that period was 2.95 per cent. Using the percentage ratio of 2.9 to determine the cost of bread, Gaston showed that there had been an overcharge for bread actually delivered during the months of June, July, August, September and October 1 to 5, 1950, in the sum of $1,208.49.

The cafe manager testified that, after the first few days, he allowed the bread salesman to enter the storeroom and check the bread supply and add what was

needed, without keeping watch over him. And the manager and two or three other employees testified that they approved the tickets presented by the bread salesman without actually checking the amount of bread delivered. These witnesses testified that they did this because they had confidence in the Hardin's Bakeries and relied upon the honesty of its salesman.

W. H. Murphy, President of the Colonial Baking Company, testified that he had been engaged in the wholesale baking business about 14 years, and that the procedure generally followed in the baking business, in servicing the accounts of customers, was that the baking company salesman would go into the bread pantry and check the supply and add whatever was necessary to take care of the needs of the customer until the next delivery, and that nine out of ten of the customers did not check the amount of bread delivered each day by the bread salesman.

M. D. Brown, testifying as a witness for the appellee, stated that the Bakeries Corporation did not have any records by which they could ascertain how many loaves of bread and buns were delivered to each particular customer on the salesman's route. He testified that Carl Maddox was employed by Hardin's Bakeries Corporation as a salesman during the period from June 1, 1950, to October 6, 1950; that they furnished him with books of sales tickets, and that he was not required to turn in the original of the sales slips to the company. Each salesman was charged with the quantities of bread loaded on his truck, and was credited with the amount of bread that he returned to the storeroom after each trip, and the amount of money paid in for bread delivered to customers.

When the suit was filed against the Hardin's Bakeries Corporation, the sales agent was made a co-defendant. But the sales agent interposed no defense, and it was agreed that a default judgment should be taken against

him at the return term, without prejudice to the right of the plaintiff to proceed to trial against the defendant Hardin's Bakeries Corporation at a later term of the court. The amount sued for in the plaintiff declaration was $1,208.49. The record showed that the defendant Maddox had paid only $72.00 on the judgment rendered against him; and the plaintiff in the trial of the suit against Hardin's Bakeries Corporation asked for judgment for the balance due on account of the alleged overcharges.

The learned circuit judge was of the opinion that the plaintiff was not entitled to recover since the cafe manager by his own carelessness contributed to the perpetration of the fraud.

We think that the trial judge was in error in holding that the Hardin's Bakeries Corporation was not liable for the dishonest acts of its sales agent.

"It is well settled that █ the principal is liable for the frauds and misrepresentations of his agent within the scope of the authority or employment of the agent, even though he had no knowledge thereof and has received no benefit therefrom." 2 Am. Jur. p. 281, Agency, par. 362. "The principal is liable to third persons for injuries resulting from the fraud and deceit of his agent if such is within the scope of the agent's authority. Acts of fraud by the agent, committed in the course or scope of his employment, are binding on the principal, even though the principal did not know of or authorize the commission of the fraudulent acts, and although he derives no benefit from the success of the fraud, and the agent committed it for his own benefit." 3 C. J. S., p. 190, Agency, par. 257.

In the case of Cleaney v. Parker, 167 Ala. 134, 140 Am. State Rep. 21, 51 So. 951, the Court held that the employer of a newspaper agency was liable for money extorted from a customer in excess of the price of the articles purchased. The Court in that case stated that

while the agent may have exceeded, and probably did exceed his authority, and violated the instructions of his principal when he collected the extra money from the customer, "yet it was clearly within the line and scope of his authority in such manner as to render the defendants liable to plaintiff for such tort of the agent; while it was the tort of the agent, as between him and his principals, it was the tort of both as between them and the plaintiff."

The case of Birkett v. Postal Teleg. Cable Co., 107 App. Div. 115, 94 N. Y. Supp. 918, was a case in which the agent of the Telegraph Company padded the statements of a customer and over a period of years collected a large sum in excess of the true amount due. The customer paid his bills at the end of each month to the agent of the company. The agent remitted the true amount due to the company, and retained the balance that he had wrongfully collected from the customer. The record showed that the plaintiff had a list of the tariffs and charges of the company, and from the examination of same might have ascertained the amount which should be paid for each telegram, but instead of verifying the charges himself the plaintiff relied upon the accuracy of the statements presented by the company's agent. The court held that the agent was acting within the scope of his agency in receiving the money for the benefit of the defendant, and that the defendant was liable for the fraud perpetrated by its agent.

In the case of Wilmerding v. Postal-Teleg. Cable Co., 118 App. Div. 685, 103 N. Y. Supp. 594, which was a case somewhat similar to the Birkett case, supra, the Court held that the plaintiff had a right to assume that the agents of the telegraph company admittedly employed by it and clothed with the power to collect money on the presentation of slips, were honest, and that the slips presented by them were genuine, and that where the defendant's messenger had forged slips and pre-

sented them to the plaintiff's cashier who paid them the company was liable. The Court in that case said: "an employer who has put it within the power of his employee to defraud a third person by intermingling fraudulent and genuine bills, and collecting money therefrom should be held responsible to an innocent third party for the dishonesty of his employee."

In the case of Sam Berkovitz v. Morton-Gregson Co., et al., 112 Neb. 154, 198 N. W. 868, 33 A. L. R. 85, the facts were somewhat similar to the facts in the case that we now have before us. The Morton-Gregson Company was engaged in the meat-packing industry at Nebraska City, Nebraska, and employed Kleeberger as its salesman and collector for the City of Omaha. Kleeberger obtained orders for the merchandise from Berkovitz and mailed them to his principal. The principal filled and shipped the orders to Berkovitz, and at the same time mailed to him the invoice for each order filled, showing the amount due for such order. The account was payable weekly, and at the end of each week Morton-Gregson Company prepared and mailed to Kleeberger a correct statement of Berkovitz's account for the week. Kleeberger fraudulently altered the footings to show larger amounts than were actually due, which he presented to and collected from Berkovitz. In an action by Berkovitz against Morton-Gregson Company to recover the amount of the excess collections so made, the Court held that Kleeberger, in presenting the altered statements of account, was acting in the line of his employment and within the apparent scope of his authority, and that Morton-Gregson Company was liable to Berkovitz for his loss, occasioned by the fraud of Kleeberger.

The case of Yoars v. New Orleans Linen Supply Company, (La. App.), 185 So. 525, is cited by the appellee's attorneys in their brief in support of the decision of the lower court. In that case the Louisiana Court of Appeal (New Orleans) held that the plaintiff was not entitled

to recover the over charges sued for because of his negligence in failing to make a proper check of the linen supplies when they were brought to his place of business. In that case the court rested its decision on the principle that where one of two innocent parties must suffer loss on account of the fraud of another, the burden of the loss should be imposed upon him who most contributed to it. But the Yoars case was decided by a divided court, and the decision rendered appears to be contrary to the weight of authority elsewhere, and we think that the principle mentioned above is not applicable in cases of this kind. ■■■ Here the fraud was committed by the agent of one of the parties while acting within the scope of his employment, and in our opinion the loss should fall on the principal, who is liable for the act of the agent, and not upon the customer who has been defrauded.

■■■ The cafe manager had a right to rely upon the honesty of the Hardin's Bakeries salesman, and the failure of the cafe manager to maintain a watch over the salesman to prevent the salesman from defrauding the owner of the cafe did not relieve the Hardin's Bakeries Corporation from liability for the fraud. The loss should not be placed upon the appellant merely because the appellant's cafe manager and the other employees in the cafe reposed confidence in the reliability of the Hardin's bakeries and the integrity of its bread salesman.

There is no merit in the contention made by the appellee's attorneys that the appellant made Maddox its agent when it permitted Maddox to go into the bread pantry and check the supply of bread for the purpose of determining how much bread the cafe needed. Maddox was the agent of the Hardin's Bakeries, and not the Billups Petroleum Company, when he was delivering bread to the cafe and collecting the purchase price therefor, and ■■■ Maddox was acting for his principal when he prepared the sales tickets showing the items of mer-

chandise which he claimed to have delivered each day and for which he demanded and received payment.

We think that the trial judge was in error in holding that the appellee was not liable for the fraudulent acts of its salesmen.

We also think that the proof of the damages sustained by the Billups Petroleum Company was sufficiently certain to enable the Billups Petroleum Company to recover. It is undoubtedly true that the plaintiff in a case of this kind must prove its damages with a reasonable degree of certainty. But the plaintiff should not be deprived of its right to recover because of its inability to prove with absolute certainty the extent of the loss or the exact amount of money unjustly and illegally collected, and the law does not require such absolute accuracy of proof. As aptly stated in Linen Thread Co. v. Shaw C. C. A., 9 F. 2d 17, 19, ''The rule that damages, if uncertain, cannot be recovered, applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent a recovery.'' 17 C. J., p. 756, Damages, par. 90; Rule v. McGregor, 117 Iowa 419, 90 N. W. 811; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U. S. 555, 51 S. Ct. 248, 75 L. Ed. 544. See also Shields v. Booles, 238 Ky. 673, 38 S. W. 2d 677.

In the case of Story Parchment Co. v. Paterson Parchment Paper Co., supra, the Supreme Court of the United States, in discussing the degree of proof required to prove the amount of damages in a tort action said: ''Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of

just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 379, 71 L. Ed. 684, 691, 47 S. Ct. 400. Compare The Seven Bros. (D. C.) 170 Fed. 126, 128; Pacific Steam Whaling Co. v. Alaska Packers' Asso., 138 Cal. 632, 638, 72 Pac. 161.''

There were no records that could be produced in the case that we have here to show with absolute certainty the amount of the overcharges made by Hardin's Bakeries salesman. But the salesman himself permitted a default judgment to be entered against him for the amount sued for, and thereby admitted an indebtedness owing by him to the appellant in that amount. The evidence offered on behalf of the appellant was sufficient to establish with a reasonable degree of certainty the amount of the over charges for which the appellee was liable, and that evidence was undisputed. The appellant was therefore entitled to a judgment for the amount sued for, less the $72.00 payment already received from Maddox.

The judgment of the lower court is therefore reversed and judgment entered here in favor of the appellant for the amount sued for, less the above mentioned credit.

Reversed and judgment rendered for the appellant.

*Roberds, P. J.,* and *Hall, Holmes* and *Lotterhos, JJ.,* concur.

## ON SUGGESTION OF ERROR

May 18, 1953 32 Adv. S. 1 64 So. 2d 764

LOTTERHOS, J.

The suggestion of error filed by appellee reargues at length two propositions upon which it principally relied in its original brief. We have carefully examined the contentions made, and conclude that there is no merit in the suggestion of error.

Passing now to a matter not mentioned in the suggestion of error, we have decided to make an additional comment on one phase of the case as discussed in the original opinion, in order that there may be no misunderstanding of our reasons. The declaration of appellant sought recovery of $1,208.49. The suit was against appellee and its salesman, Maddox. Judgment by default was taken against Maddox at the return term for said amount. When the cause came on for trial at a later term, before the court without a jury, on issue made by the answer of appellee, the following stipulation was noted:

"Let the record further show that it was agreed between the attorneys for plaintiff and defendants, represented by Mr. Mitchell, that plaintiff would take judgment against the defendant Carl Maddox at default at the 1950 term of this court without prejudice in any way to a future trial against the other defendants if such a trial was requested by plaintiff since collection from defendant Maddox in full would render unnecessary any further proceedings against the other defendants. That the defendant Maddox has only paid $72.00 to plaintiff despite repeated efforts to collect from him and that the other defendants are entitled to a credit of said amount so paid, and this cause has now been set for trial pursuant to said agreement."

In view of this stipulation, and of the fact that appellee made no contention that, in event it should be held lia-

ble on this record, the amount of damages should be fixed by a jury or the trial court, and of the fact that the proof on the amount of damages was practically undisputed, we reversed and rendered judgment against appellee for the sum of $1,208.49 sued for, less $72.00 paid by Maddox.

Suggestion of error overruled.

*Roberds, P. J.,* and *Hall, Kyle,* and *Holmes, JJ.,* concur.