MANUEL R. LUCAS, FRANK R. LUCAS, JOHN R. LUCAS, JR., FREDERICK VIERRA AND JOHN T. FREITAS, DOING BUSINESS AS SAVEMORE SUPERMARKET *v.* LIGGETT & MYERS TOBACCO COMPANY AND GEORGE IWAMOTO.

No. 4495.

JUNE 26, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO AND LEVINSON, JJ., AND CIRCUIT JUDGE FAIRBANKS IN PLACE OF ABE, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by plaintiffs from a circuit court judgment, entered pursuant to a jury verdict, dismissing their action as against defendant Liggett & Myers Tobacco Company on the merits, and adjudging defendant George Iwamoto liable to plaintiffs for the payment of compensatory damages in the sum of $23,578.45, plus costs of court.

Plaintiffs are owners and operators of Savemore Supermarket in Hilo, Hawaii. Iwamoto was an employee of Liggett & Myers between January 20, 1958, and November 7, 1962. At the time Iwamoto began his work with the company, Liggett & Myers manufactured Chesterfield, L & M and Oasis cigarettes. Later, it added Duke cigarette to its line of products. John Hamner, division manager, directed the sales activities of Liggett & Myers in this state.

Iwamoto was hired by Hamner, trained by him, and, at all times pertinent to this case, worked under his supervision as the company's sales representative on the island of Hawaii. As such sales representative, Iwamoto's job was to sell and promote the sales of Liggett & Myers products by calling upon stores in the geographical area assigned to him. In this connection, Liggett & Myers provided Iwamoto with a panel truck decorated with decals of its products; name cards engraved with facsimiles of Chesterfield, L & M, and Oasis cigarettes and with Iwamoto's name printed thereon as its sales representative; cigarette racks to be placed in stores; advertising materials to be placed on the racks; brown leather sample bag; samples of cigarettes; and various printed forms.

During the period Iwamoto worked for Liggett & Myers, one of the methods used by the company in promoting the sales of its products was to have its racks placed in supermarkets. These racks were used not only to display Liggett & Myers products, but also to display cigarettes of other manufacturers. The advantages Liggett & Myers derived from placing its racks were that it had the right to display its cigarettes on the eye-level shelf and it had the additional right of displaying its posters and other advertising materials on top of the racks, to the exclusion of advertisements of other manufacturers.

The same method was used by other cigarette manufacturers in promoting the sales of their products. Consequently, competition for rack space in supermarkets was very keen. Part of Iwamoto's job as sales representative of Liggett & Myers was to encourage supermarket owners to allow him to place his company's racks in their stores.

Iwamoto was acquainted with Manuel Lucas, one of plaintiffs and manager of Savemore Supermarket. So, he approached Lucas, and obtained his permission to place a Liggett & Myers rack in the store, upon the agreement that Liggett & Myers would pay $10.50 per month for the space and would provide complete servicing of the rack. The rack held 750 cartons of cigarettes.

At the outset, Iwamoto and Lucas did not spell out the details of the servicing, the only statement made by Iwamoto being that it would be done to the extent that Lucas would not have to worry about it. As performed by Iwamoto, the servicing consisted of the following activities: when the rack was placed in the supermarket, he filled it with all brands of cigarettes, including competitive brands; thereafter, on his regular calls at the supermarket, which normally occurred twice each week, he removed crushed and moldy cigarettes from the rack and took them out of the store, took inventory of the remaining cigarettes and rotated them, prepared orders for all brands of cigarettes required to restock the rack, took the orders to a wholesaler, delivered the orders filled by the wholesaler to the store, and refilled the rack. The orders were placed in the name of Savemore Supermarket with Island Tobacco Co., Ltd., which billed the supermarket and was paid by the supermarket. When Iwamoto made the deliveries, an employee of the supermarket receipted for the deliveries.

Iwamoto testified that all of the servicing activities which he performed at Savemore Supermarket were authorized by Liggett & Myers. He also testified that Hamner observed him engaging in these activities on his visits to the island of Hawaii but did not disapprove them. Liggett & Myers did not adduce any contrary testimony or evidence.

During the period Iwamoto serviced the rack, unbeknown to Savemore Supermarket or to Ligett & Myers, Iwamoto was stealing large quantities of cigarettes. This he did by overordering cigarettes required to restock the rack, delivering them to the store, and clandestinely putting excess cigarettes into the brown leather bag which he always carried with him while ostensibly servicing the rack.

In September 1962, Lucas became suspicious of Iwamoto, and took steps to obtain evidence against him. Iwamoto was caught stealing on November 2 and November 5, 1962. After he was caught, Iwamoto admitted the thefts. He was indicted for committing larceny in the first degree, and, upon his plea of guilty, was convicted of the offense on January 3, 1963.

Thereafter, plaintiffs filed their complaint in this case to recover their loss from the thefts, joining Iwamoto, Liggett & Myers, and Island Tobacco Co., Ltd., as defendants. The complaint as against Island Tobacco Co., Ltd., was dismissed with prejudice upon stipulation of parties. The complaint as against Iwamoto, upon entry of an order granting plaintiffs' motion for judgment on the pleadings on the issue of his liability, was narrowed down to the issue of the amount of damages. The complaint as against Liggett & Myers involved both the issue of liability and the issue of the amount of damages.

Upon completion of the presentation of evidence to the jury, plaintiffs moved for a directed verdict as against Liggett & Myers on the issue of liability. The court denied the motion. The jury returned a verdict finding Liggett & Myers not liable for Iwamoto's thefts. After the entry of judgment in accordance with such verdict, plaintiffs moved for judgment in their favor and against Liggett & Myers on the issue of liability notwithstanding the verdict. This motion was also denied.

The trial court erred in denying plaintiffs' motion for a directed verdict and their subsequent motion for judgment notwithstanding the verdict.

The rule applicable to this case is stated in *Restatement of Agency 2d*, § 261 (1957), as follows:

"§ 261. Agent's Position Enables Him to Deceive.

A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

This rule was followed in *Ripon Knitting Works* v. *Railway Express Agency*, 207 Wis. 452, 240 N.W. 840 (1932), and *Billups*

*Petroleum Co.* v. *Hardin's Bakeries Corp.*, 217 Miss. 24, 63 So. 2d 543 (1953). Both cases involved facts similar to the facts in this case.

The basis for liability under the quoted rule is that "the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him." *Restatement of Agency 2d*, § 261, Comment *a*.

In this case, Liggett & Myers put Iwamoto in a position to commit the thefts. Iwamoto was its sales representative. His job required him to be alert to opportunities for placing the company's racks in supermarkets. He found such opportunity in Savemore Supermarket. So, he approached Lucas. Lucas did not approach Iwamoto. The installation of the Liggett & Myers rack in Savemore Supermarket was done at the instance of Liggett & Myers, through Iwamoto, its duly authorized sales representative, not at the instance of Savemore Supermarket. If Liggett & Myers had not employed Iwamoto and if it had not placed its cigarette rack in Savemore Supermarket, Iwamoto would not have had the opportunity to commit the thefts. According to the uncontradicted evidence in this case all of Iwamoto's servicing activities were authorized activities, and from the point of view of Savemore Supermarket, Iwamoto appeared to be acting within his authority, particularly in the light of the fact that Hamner accompanied Iwamoto on his visits to the island of Hawaii and gave no indication that he disapproved any of Iwamoto's servicing activities at the supermarket.

The fact that, in committing the thefts, Iwamoto acted for his own purpose did not relieve Liggett & Myers from liability, if it was otherwise liable for his acts. *Restatement of Agency 2d*, § 262; *Ripon Knitting Works* v. *Railway Express Agency, supra; Gleason* v. *Seaboard Air Line Railway Co.*, 278 U.S. 349 (1929).

Liggett & Myers argues that it is not liable because Iwamoto was not acting within the scope of his employment when he committed the thefts, and quotes a statement, which appears to favor it, out of context from a comment to *Restatement of Agency 2d*,

§ 231. However, the text of the restatement in § 231 is as follows: "An act may be within the scope of employment although consciously criminal or tortious." The wording of the restatement in § 262 is as follows:

"§ 262. Agent Acts for His Own Purposes.

A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this."

The record in this case contains no evidence that Savemore Supermarket was aware that Iwamoto was acting for his own purpose while he was engaged in servicing the rack.

As previously stated, Liggett & Myers did not adduce any testimony or evidence to rebut Iwamoto's testimony that all of his servicing activities were activities authorized by his employer. Where evidence as to employee's scope of authority is undisputed as in this case, the determination of the matter is not within the province of the jury but is a question of law for the court. *Deponte* v. *Ulupalakua Ranch,* 48 Haw. 17, 395 P.2d 273 (1964).

Applying the rule discussed above to the undisputed evidence in this case, plaintiffs were entitled to a directed verdict against Liggett & Myers on the issue of liability.

On the question of the amount of damages, the verdict of $23,578.45 represented a finding of total compensatory damages of $32,581.52, less $9,003.07 reimbursed by Iwamoto. Plaintiffs contend that the testimony of their expert witness clearly established total compensatory damages of $65,000, and that the verdict resulted from erroneous refusal of their requested instructions regarding the weight to be given to expert testimony. Other than the testimony of plaintiffs' expert witness, evidence on the amount of damages consisted of Iwamoto's testimony regarding the amount he received from the sales of stolen cigarettes and the amount of stolen cigarettes which he gave away. Iwamoto estimated that he received $20,000 from the sales and that he gave away about 30 per cent of the stolen cigarettes.

One of the instructions requested by plaintiffs and refused by the court was to the effect that inasmuch as the subject matter of the evidence regarding the loss suffered by Savemore Supermarket was not "within the common knowledge of laymen, but is within the exclusive province of specialized study and experience, it may not be contradicted by the opinion of a non-expert, * * *." This instruction was copied from *California Jury Instructions Civil*, p. 91, No. 33-B (4th rev. ed. 1956). The 1967 Cumulative Pocket Parts to this publication states: "Approval of this instruction has been withdrawn."

We have examined and considered plaintiffs' specifications of errors regarding the giving and refusal of instructions, and also with regard to admission and rejection of evidence, on the issue of the amount of damages, and find no error.

The judgment is affirmed with respect to Iwamoto, and reversed with respect to Liggett & Myers, and the case is remanded to the court below with direction to enter judgment in favor of plaintiffs and against Iwamoto and Liggett & Myers for the amount of compensatory damages found by the jury, with costs of court.

*James P. Wohl* (*Robert E. Bethea* with him on the briefs, *Carlsmith, Carlsmith, Wichman & Case* of counsel) for plaintiffs-appellants.

*Alexander C. Marrack* (*J. Garner Anthony* with him on the brief, *Robertson, Castle & Anthony* and *Doi & Kanemitsu* of counsel) for defendant-appellee Liggett & Myers Tobacco Company.

*Kazuhisa Abe* for defendant-appellee George Iwamoto, filed no brief and did not argue.