COURT OF APPEALS
DECISION
DATED AND FILED

December 6, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1038**

Cir. Ct. No. **2022SC1115**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

DANIELLE S. HUMSKI,

PLAINTIFF-RESPONDENT,

V.

OSHKOSH WELLNESS CENTER, RACHELLE LAUX AND JEFF SCHERER,

DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Affirmed.*

¶1     LAZAR, J.[1]  Oshkosh Wellness Center ("OWC"), Rachelle Laux, and Jeff Scherer (collectively "Appellants") appeal from a judgment entered

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

against them in favor of Danielle S. Humski. The trial court held that Appellants were liable under the doctrine of respondeat superior for certain payments Humski made to their employee for treatment at their clinic that were actually, according to Appellants, stolen by that employee. For the reasons that follow, this court affirms.

¶2 Laux and Scherer are married to one another and are co-owners of OWC. Humski received counseling services from OWC over twenty-two months from 2019-21. Humski asserts that she paid $9,000 to the Appellants in cash and credit card payments over this time period.[2] Humski made these "down payments" to Katie Niemuth, the front desk "secretary" of OWC to whom Humski says she was directed (by Laux) for making such payments. Scherer confirmed that Niemuth was indeed "trusted with the billing, … trusted with the money." According to Scherer, neither he nor his wife ever handled the money in the clinic.

¶3 At some point, Humski learned that her insurance company had been over-billed for treatment from OWC; in some cases, the insurance company was billed for family members that never even went to the clinic. Immediately after Humski called the clinic to ask questions about a denial of coverage by her insurance company, Scherer called her back and sought her cooperation in investigating Niemuth, who, he asserts, probably stole any cash that came in. As for Humski's credit card payments, Scherer testified that Niemuth used a Square account that she opened in the name of OWC to take those payments; according to Scherer, the clinic did not use Square, and "that's how [Niemuth] did the

---

[2] Humski's insurance company also made payments for these services—and for some appointments that never happened—totaling over $90,000.

insurance fraud." The actual legal name of the business, he testified, is Oshkosh Counseling Center Inc.—although most of the "statements" Humski received from the clinic and produced at trial are from "RaChelle Laux,"[3] the "route slips" filled out by the clinic detailing treatment given and a receipt for products purchased from the clinic show the name "Oshkosh Counseling Wellness Center," and letterhead from the clinic refers to "Oshkosh Counseling Wellness Center" as "A Division of Oshkosh Counseling Center, Inc." Humski claims that when she declined Scherer's invitation to cooperate with him against Niemuth, all of her appointments were canceled.

¶4      Humski brought a claim against Appellants seeking recovery of $8,000.[4] In their answer, Appellants asserted as their sole defense that they "never told Danielle Humski to pay cash to anyone" and that they "never saw" payments given to Niemuth, who was "being charged for theft." After Humski and Scherer testified at trial as summarized above, Scherer called an employee who worked alongside Niemuth at the front desk as his witness. She confirmed that the clinic never used Square for billing, stated that "monthly billing was a mess," and discussed some of the procedures at the front desk and the fact that she did not trust Niemuth. Finally, Humski called her mother, who testified that she had been present when Humski discussed cash payments for counseling services with Laux and had heard Laux tell Humski to "take [cash] to Katie at the front desk and Katie would know how to process that."

---

[3] These statements show charges, the amount of insurance checks, and an amount due, which was to be paid, apparently, to Laux at the clinic's address.

[4] It is unclear why Humski sought $8,000 in her complaint when she testified that she made payments to Niemuth totaling $9,000.

¶5     Noting the evidence the parties had presented regarding the Department of Justice's investigation of Niemuth, the trial court stated its belief that Niemuth had engaged in "criminal behavior." It then held Appellants liable for $6,000 (the amount of payments to Niemuth that Humski had proved to the court's satisfaction) under the doctrine of respondeat superior. Under this centuries-old doctrine, "a supervisory party (such as an employer) bears [vicarious liability] for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties." ***Kerl v. Dennis Rasmussen, Inc.***, 2004 WI 86, ¶17, 273 Wis. 2d 106, 682 N.W.2d 328 (quoting BLACK'S LAW DICTIONARY 927 (7th ed. 1999)).

¶6     Appellants raise four issues on appeal. The first three concern the identities of the Appellants as they relate to each other and to Niemuth—appellants assert that the trial court erred: 1) in holding Laux and Scherer liable because no evidence showed that Niemuth was employed by them in their personal capacities; 2) in applying the doctrine of respondeat superior against Laux and Scherer as opposed to against Niemuth's employer; and 3) in holding OWC liable when Niemuth's actual employer is Oshkosh Counseling Center, Inc. Finally, they assert that respondeat superior is inappropriate because Niemuth's actions constituted an intentional tort rather than negligence and because Niemuth was not acting within the scope of her employment when she stole Humski's money.

¶7     This court upholds the trial court's findings of fact unless they are clearly erroneous. ***Noll v. Dimiceli's, Inc.***, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). A finding is not clearly erroneous if it is supported by evidence in the Record. ***State v. Gammons***, 2001 WI App 36, ¶9, 241 Wis. 2d 296, 625 N.W.2d 623. "An appellate court is not bound by a trial court's

conclusions of law," however, and reviews legal issues de novo. *City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992).

¶8      The trial court's finding that Laux and Scherer employed Niemuth—a finding the court necessarily had to make to hold Laux and Scherer personally liable for money Humski gave to Niemuth—is not clearly erroneous. *See Kerl*, 273 Wis. 2d 106, ¶18 ("A prerequisite to vicarious liability under respondeat superior is the existence of a master/servant relationship."). Evidence supporting this finding includes billing statements bearing Laux's personal name (and no corporate name of any kind) and Scherer's trial testimony, in which he stated "I think I did" in response to the court's question as to who hired Niemuth. Thus, this court affirms the trial court with respect to the personal liability of Laux and Scherer. Notably, the Appellants did not contest these issues at trial or argue that Laux and Scherer did not employ Niemuth.

¶9      Likewise, with respect to the third issue they raise on appeal, Appellants did not argue before the trial court that Humski had sued the wrong corporate entity or move to dismiss her claim on that basis. *See Gibson v. Overnite Transp. Co.*, 2003 WI App 210, ¶9, 267 Wis. 2d 429, 671 N.W.2d 388 ("Generally, we will not consider on appeal arguments not made to the trial court."). Scherer stated only that he "hope[d] [the name of the corporation would be] corrected on the record, because it's Oshkosh Counseling Center Inc." To that end, Appellants actually identified "Oshkosh Counseling Center In[c.]" as one of the defendants in their answer. Where, as here, a "misnomer or misdescription does not leave in doubt the identity of the party intended to be sued," a court could amend the judgment in the interests of justice if necessary; but there are no grounds for reversal. *See Hoesley v. La Crosse VFW Chapter*, 46 Wis. 2d 501,

502-03, 175 N.W.2d 214 (1970) (affirming denial of motion to dismiss based on complaint erroneously referring to defendant corporation by the wrong name).

¶10     Having determined that the trial court did not clearly err in its factual findings regarding the identities of the Appellants or their relationships to one another, this court turns to the legal question of whether respondeat superior can apply to impose vicarious liability on employers for intentional criminal acts of their employees and not just for negligent acts.  Appellants are wrong in asserting that it cannot.  In ***Ripon Knitting Works v. Railway Express Agency, Inc.***, for example, an employer was liable for the intentional (and criminal) fraud committed by its employee.  207 Wis. 452, 240 N.W. 840 (1932).  While Appellants cite several cases dealing with vicarious liability of an employee for negligence, *e.g.*, ***Scott v. Min-Aqua Bats Water Ski Club, Inc.***, 79 Wis. 2d 316, 320, 255 N.W.2d 536 (1977), they cite none standing for the proposition that respondeat superior applies *only* in cases of negligence.  *See **id.*** (quoting RESTATEMENT (SECOND) OF AGENCY § 219(1) (1957), which says "[a] master is subject to liability for the *torts* of his servants committed while acting in the scope of their employment" and not distinguishing between intentional torts and negligence (emphasis added)).

¶11     Finally, Appellants argue that they can only be liable for Niemuth's actions "within the scope of [her] employment" and that Niemuth's theft for her own benefit cannot "logically or fairly be said to be part of [her] duties" with the clinic.  Cases to which Appellants point stand for the proposition that "consideration must be given to whether the employee was actuated, at least in part, by a purpose to serve the employer."  *See, e.g.*, ***Olson v. Connerly***, 156 Wis. 2d 488, 500, 457 N.W.2d 479 (1990).  There are Wisconsin cases in which an employer was not liable for the actions of an employee as a matter of law

because the employee's conduct was not arguably connected to what the employee was hired to do and there was no evidence to the contrary. In ***Block v. Gomez***, 201 Wis. 2d 795, 807, 549 N.W.2d 783 (Ct. App. 1996), for example, a clinic was not liable for damages resulting from the sexual relationship between one of its counselors and a patient because the counselor's actions in entering the sexual relationship could not, under any circumstances, be viewed as falling within the scope of his employment with the clinic. *See also* ***L.L.N. v. Clauder***, 203 Wis. 2d 570, 589, 552 N.W.2d 879 (Ct. App. 1996) *reversed in part by* 209 Wis. 2d 674 (stating that employee's conduct is not within the scope of employment if it is different in kind from authorized conduct or insufficiently driven by a purpose to serve the employer).

¶12    But whether an employee was acting in the scope of employment in committing the actionable conduct is usually a factual question, ***Block***, 201 Wis. 2d at 804, and this court concludes that the trial court did not err in holding that Niemuth acted in the scope of employment when taking money from Humski. There is ample evidence supporting the finding that taking payments from customers was part of Niemuth's job; by Scherer's admission, she was hired to take payments and "handle money." Indeed, this case presents facts very similar to those in ***Ripon Knitting Works***, in which an employee fraudulently took and kept portions of payments from a customer and our supreme court stated:

> It seems too plain for argument that what [the employee] did he did within the scope of his authority as a … collection agent of the defendant. It is true that the defendant never expressly authorized [the employee] to make fraudulent misrepresentations. It is equally true that [the employee] made these for his own benefit and that the defendant did not profit thereby. If these facts constituted a defense in law, no principal would ever be liable for fraudulent misrepresentations unless the principal had authorized or ratified it. [The employee's] authority was to collect express charges. When [the customer] paid him

7

> money …, he was acting precisely in all respects as if authorized to do so, and, relying upon the misrepresentations, the money was paid to him and the company's receipt taken therefor.

207 Wis. at 457. The court went on to state that "in cases of this kind care must be exercised to distinguish between authority to commit a fraudulent act and authority to transact business in the course of which the fraudulent act is committed." *Id.* at 459. In cases where the latter is proven, as it was in Humski's case, an employer is "liable without fault on his part." *See id.*

¶13 Appellants did not present any defense that the money paid by Humski was owed to the clinic and that Niemuth stole from the clinic, not Humski. Nor did Humski appeal the amount of the trial court's award or present this court with a reason she should have been awarded the full amount of her loss. Under these circumstances, for the foregoing reasons, the judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.