[No. 1641.]

THE McIntosh-Huntington Co. v. Rice.

1. APPELLATE PRACTICE—FINDINGS OF TRIAL COURT—EVIDENCE.
Where there are no disputed questions of fact and no conflict of evidence the appellate court will examine the evidence to determine if therefrom the trial court has reached a correct conclusion.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.
Where an agent was authorized to sell merchandise for his principal, or to establish an agency for that purpose, one who deals with him on any other basis cannot bind the principal. One who deals with such an agent is bound to ascertain any limitation on his authority and cannot hold the principal if the agent exceeds his authority.

3. SAME—AGENT TO SELL HAS NO AUTHORITY TO BUY.
An agent to sell goods for his principal has no authority to himself become the purchaser, nor can another dealing with such an agent himself purchase the goods and sell to the agent and compel the principal to look to the agent for the purchase price.

4. PRINCIPAL AND AGENT—INDIVIDUAL CONTRACT OF AGENT—KNOWN PRINCIPAL NOT BOUND.
Where one deals with the agent of a known principal and accepts the written contract of the agent in which the principal is not made a party, but which purports to be only the contract of the agent, the principal is not bound on the contract.

5. BILLS AND NOTES—PAROL AGREEMENT WITH AGENT.
Where a party executes his notes and delivers them to an agent to be forwarded to his principal, and the principal in consideration thereof parts with his goods, the maker of the notes cannot avoid payment by proof of an agreement with the agent, whereby he was to be bound only on certain conditions.

6. BILLS AND NOTES—PAROL AGREEMENT TO VARY.
The terms of a promissory note cannot be varied by proof of a parol agreement made before its delivery.

*Appeal from the District Court of Arapahoe County.*

A STATEMENT of the origin of this controversy, and a copy of the documents executed by the parties in interest will greatly facilitate the decision, and make it easy of apprehension.

In the early part of 1893 the appellee Rice with one West-

lake and Sidney H. Percy entered into negotiations looking to the establishment of a bicycle business in Denver for the handling of the Sunol bicycles manufactured by the McIntosh-Huntington Company of Cleveland, Ohio. Shortly after the negotiations began the panic of 1893 struck the country and the contemplated arrangements were abandoned, at least, so far as concerned the formation of the copartnership and the carrying out of the original enterprise. Percy was in Colorado as the agent of the McIntosh-Huntington Company, to establish the agency for the sale of machines. Notwithstanding the abandonment of the copartnership arrangement for some reason which is not made apparent by the testimony, the company seemed to conceive it possible to establish a store. At all events, without the completion of the copartnership or the establishment of the agency, the corporation shipped to Denver seventy-five bicycles, and sent the bill of lading to Rice. Rice did not take the machines, pay the freight, or assume control of them. The reason for the shipment of these machines to Rice in the absence of an antecedent contract is not apparent. Rice did not receive them, present his bill of lading or take them from the railroad company. Shortly thereafter Percy either returned to Denver, or not having left, went to Rice and endeavored to induce him to accept an agency for the machines, or to purchase them under some arrangements which should be made between them. A large amount of evidence was given by Rice covering the transaction with Percy; conversations had, Percy's declarations respecting his authority and his agency, and the position which Rice took with reference to the handling of the machines. We need not state those conversations nor Rice's testimony, for though they were admitted the testimony was wholly inadmissible and cannot be considered in the determination of the case. As we look at it the rights of the parties are measured by the written contracts which appear in the record and the extent and limits of Percy's agency are disclosed by the circumstances and history of the case found in the evidence other than what was given by

Rice, which cover these antecedent negotiations. After the bicycles were shipped and while they were in Denver, and during the progress of these negotiations on the 25th of August Rice wrote a letter to the McIntosh-Huntington Company, wherein he stated to them the existing conditions. It would appear therefrom that the company had written a letter to Rice respecting the contemplated agency, and he stated that the change in financial conditions had been serious, and that it was quite impossible for him to realize on his holdings and carry out the arrangements he had made regarding the business. He further stated that though matters were dull there was a decided improvement, and he anticipated that in a short time affairs would be so settled as to enable him to see his way clear to do considerable business, and he proceeds: " The wheels are safely stored and insured, and I should like to retain them here unless you have a market for them there at present. I am quite positive, however, of my ability to dispose of them within a reasonable time, and certainly a very considerable period in advance of the date that your ordinary market is open. In the mean time I will, of couse, pay all charges necessary to see that proper care is taken of them, and you can rest assured that at any time should you desire to have them returned, I will guarantee that they are in as good condition as they were when they were shipped from your factory. Awaiting your reply, I am," etc. Thereafter Percy and Rice negotiated about the disposition of these seventy-five machines. As already indicated, we shall dismiss Percy's declarations because we regard the contract into which he and Rice entered as determinative of the rights of the parties and conclusive as to Rice's responsibility. All the negotiations between Rice and Percy were merged into this agreement which can alone be looked to to settle their rights. After the letter which has been referred to and quoted from, the following contract was entered into:

" This memorandum is made and reduced to writing this second day of September, A. D. 1893, by and between John

C. Rice, hereinafter called the first party, and Sidney H. Percy, hereinafter called the second party, for the purpose of bearing witness to the following understanding; that is to say, based upon a consideration of the mutual undertakings hereinafter made between the parties, and the payment of one dollar by the second party to the first party, it is agreed, covenanted and understood as follows:

" Whereas, the first party has purchased from the McIntosh-Huntington Company, of Cleveland, Ohio, seventy-five (75) bicycles through the agency of the second party, who is the authorized representative of said McIntosh-Huntington Company, at and for the price and sum of four thousand nine hundred and twenty-five (4,925) dollars, evidenced by two promissory notes, given in settlement of the aforesaid purchase price; and

" Whereas, the second party has purchased from the first party the same bicycles, at and for the same price, to wit: four thousand nine hundred and twenty-five (4,925) dollars, evidenced by a promissory note in adjustment of said purchase price; and

"Now it is understood and agreed between the parties that the second party will proceed to sell said bicycles, and from the proceeds derived from any such sales to first discharge the said note given by the first party to the McIntosh-Huntington Company, the payments to be credited contemporaneously on the note given by the second party to the first party, and the remainder of any such proceeds, after deducting all absolutely necessary expenses, to be divided equally between the parties hereto, it being expressly understood that all of the net profits arising from the sale of any or all of said bicycles shall be applied equally and divided equally between the parties to this agreement.

"It is further agreed and understood, that should said second party be unable to dispose of said bicycles, so as to discharge the note made from the second party to the first party, then to the extent of any such failure to pay off and discharge said note, the first party shall be relieved in like proportion

from his liability to the McIntosh-Huntington Company, on the two promissory notes given by him to the said company, it being the true meaning and purpose of this clause of the agreement that the liability of the first party to the McIntosh-Huntington Company shall be measured by the amount received by him from the second party, as derived from the proceeds of the sale of said bicycles, and no more.

" In testimony whereof the parties hereto have caused this paper to be drawn up and executed in duplicate the day and year first above written.    Witness their hands and seals.

" John C. Rice.        [Seal.]

" Sidney H. Percy.    [Seal.] "

After making it Rice executed two notes to the McIntosh Huntington Company for the purchase price of the machines. When one of them fell due he made a renewal note, and it with the other are the two instruments sued on.    These notes substantially are : one of them dated the 2d of September, 1893, for value received, whereby Rice promises to pay the McIntosh-Huntington Company $3,285 six months after date with interest at six per cent, and the other was a promise bearing date on the 30th day of December, and for value the defendant thereby promises to pay the McIntosh-Huntington Company $1,662.80 sixty days after date.    These two notes were delivered to Percy who sent them to the McIntosh-Huntington Company as the price of the machines.    After the delivery of this commercial paper Rice turned the bills of lading over to Percy and according to his testimony Percy took possession of the machines.    What he did with them, how he disposed of them, what other arrangements were made between Percy and Rice about them remains undisclosed.    Percy was not a witness.    Inferentially it would appear Percy sold the machines, appropriated the proceeds to his own use and failed to account for the price either to Rice or to the McIntosh-Huntington Company.    The price not being remitted, and the notes remaining unpaid, the company brought suit on the notes and Rice defended on the

ground of want of consideration, and set up his transaction with Percy and sought to escape liability on the theory that Percy was the agent of the McIntosh-Huntington Company in the transaction and that that corporation was bound by Percy's acts, by the agreement which he had made on their behalf, though in his own name, and that his agency was of the sort to give him power to make an agreement which would bind the corporation.    To establish this agency the defendant introduced sundry letters from the company which conceded his agency for some purposes, and a letter which was supposed to contain a specific authority, and which would make his authority ample to execute the contract and thereby relieve Rice from any responsibility.    Undoubtedly Percy was the agent of the corporation to sell machines and under some circumstances perhaps to establish an agency.    Specific authority for the purposes of this transaction is found in a letter of the corporation over the signature of the company and by its secretary, which is as follows :

"CLEVELAND, O., 8–28–93.
" Mr. JOHN C. RICE,
    " Denver, Colo.
" Dear Sir :  We are in receipt of yours of the 25th.    As our Mr. Percy is still in Denver, we have referred this matter to him, and trust he will be able to make some arrangements with you that will be satisfactory to all parties.
          " Yours truly,
              " THE McINTOSH-HUNTINGTON CO.,
                  "per H. H. BISHOP, Sec'y."

This is the only specific designation of Percy as the agent of the company.    It is clear, however, not only from this letter, but from the antecedent correspondence that Percy's agency was one for the sale of machines, and possibly, the creation of an agency for their disposition in the city of Denver.    Further than this, the evidence does not go, nor do the letters warrant any other conclusion.    On the maturity of the paper and the demand for payment there was consider-

able correspondence wherein Rice asserted the responsibility of the corporation for Percy's acts, denied all liability and refused to pay. Suit was brought and Rice defended, setting up this want of consideration, introduced this proof and gave a good deal of testimony as to his negotiations with Percy. The trial court concluded Percy was a general or universal agent, that his acts bound the corporation, that he had a right to make the contract, and that the corporation was bound by this agreement, and therefrom concluded the defense was maintained and the plaintiff had no right to recover. Judgment was entered accordingly, wherefrom the company appeals.

Messrs. Rogers, Cuthbert & Ellis, for appellant.

Mr. Pierpont Fuller, of counsel.

Messrs. Wells, Taylor & Taylor, for appellee.

Bissell, P. J.

The application of a few tolerably well settled legal principles will dispose of the propositions on which the appellants rely, and they are equally conclusive of the contentions of the appellee. The appellee wholly relies on the general rule which prevails in the appellate courts. Where a case is controlled by the facts and the findings of the trial court are with the one who insists on the application of the doctrine those findings are usually accepted. We do not believe this rule applicable to the present appeal. The trial court rendered an opinion and therein stated his conclusions on the evidence which the appellee treats as findings of fact. He insists he may safely rest thereon, and that we are necessarily concluded by them and must affirm the judgment. We do not concede this proposition. There were no disputed questions of fact. There was no evidence respecting the antecedent negotiations between Percy and Rice, save that which Rice

gave in detailing the history of the transaction. With respect to that evidence we dismiss it from consideration because these negotiations were all merged in the written agreement which must be taken as the only expression of the contract, and all the testimony which Rice gave as to what occurred between him and Percy antecedently to its execution was inadmissible, and must be dismissed from consideration. It is equally true there was no dispute respecting the nature and character of Percy's agency. The only evidence of that agency is found in the letter of delegation sent by the McIntosh-Huntington Company to Rice, wherein that corporation states that Mr. Percy is in Denver and they have referred the matter to him, and trust he will be able to make some arrangement that will be satisfactory to all parties. This is the only specific grant of authority. The only other evidence about it is found in Rice's testimony, and the further correspondence between the corporation and Rice wherein Percy is treated as their agent for the sale of machines and for the establishment of a Denver agency. We have then a record which exhibits the original appointment, with whatever limitations or extensions of power are to be found in the letters of the principal, coupled with evidence of the particular transaction about which the agent was appointed. The case then is one wherein there is no conflict of testimony, nor one in which there is any dispute. The court has found the facts, and has determined where the truth is. Substantially, it is an agreed case, and we have the right under these circumstances to look at the evidence and therefrom determine whether thereon the trial court has reached a correct conclusion. We shall therefore proceed to discuss the case on the basis of the record as presented, and determine the accuracy or inaccuracy of the conclusions embodied in the judgment, and the legal rights of the parties.

The general principles of the law of agency are well defined and the courts are agreed respecting their scope and application. The only difficulty which has been found is in the application of these principles to particular states of facts. The

trouble always lies in determining from the facts the character of the agency and the authority of the individual who has exercised the delegated power. Ever since the law on this subject was first declared law writers and judges have attempted to define the different sorts of agency. Many of the discrepancies which apparently exist have arisen from these attempts at definition. The profession, as well as the writers and judges recognize that there are many kinds of agency, either particular or special, general or universal. Without attempting to follow either jurist or law writer into this much disputed realm of definition, it may be safely said in this case that Percy was in no sense either a universal or a general agent; he certainly was not a universal agent, or as the books sometimes put it the *dominus rerum*, nor so far as the record discloses had he any general power to act for or on behalf of the corporation. He was doubtless clothed with authority to negotiate with Rice about the sale of machines and the establishment of an agency for this purpose. It was an agency to do a particular thing with reference to particular machines manufactured by this corporation. He was undoubtedly an agent to sell, but an agent to sell is one possessed of very limited authority which must be confined to the transaction in hand, and his power to sell is limited by the principle that the party dealing with the agent must in general ascertain the extent of his authority. It may be said that he was an agent for the purpose of establishing an agency. While this is true, an appointment of this description can only concern the designation of an agent to dispose of the property intrusted to his care, and with the powers and rights involved in the establishment of an agency to sell. Whether an agent to sell has power to sell on credit we need not discuss. This is clear, an agent to sell has in general no authority to purchase the property. At all events the law does not imply the right because of the appointment. His power is to sell to others. Whether this particular agency was broad enough to entitle him to sell on credit is a matter which we need not consider because according to the terms of the agreement there was an apparent

Vol. xiii—26

sale on credit, an execution and delivery of the notes, and an acceptance of these notes by the corporation.   To this extent the power of the agent was not only embraced within the terms of the authority granted, but it was confirmed by the acceptance of the paper by the principal.   We do not regard the letter as conferring on the agent unlimited power.   Under these circumstances, the law always restrains the agent to the particular business of the principal and to that part of it which is the subject-matter of correspondence between the agent and his principal and between the principal and the third party. As a general proposition if the agent attempts to do that which is not within the apparent scope of his power, the party dealing with him is bound at his peril to ascertain the extent of the power which the agent possesses.   These principles are recognized in all the cases, and only a few need be cited to support the proposition.   *Wood v. McCain,* 7 Ala. 800 ; *Gulick v. Grover,* 33 N. J. Law, 463 ; Story on Agency, §§ 210, 211, *et seq. ; Billings v. Morrow,* 7 Cal. 171 ; *Martin v. Farnsworth,* 49 N. Y. 555 ; *Smyth v. Lynch,* 7 Colo. App. 383.

These authorities might be multiplied and many cited illustrative of the general proposition and containing many specific instances of its application.   While they might strengthen the opinion, we regard the labor incident to the examination as wholly unnecessary because the principle is well established.   We conclude from the evidence that Percy was the special agent of the corporation with authority to sell machines, or to establish an agency for the purposes of sale.   Under these circumstances if Rice dealt with him on any other basis the principal would not be bound.   On the other hand Rice would be bound to ascertain any limitation on his authority, and could not hold the principal should the agent exceed his instructions.   It therefore follows that when he undertook to deal with Percy with reference to the machines which had been shipped to Denver, he could only deal with him as the agent of the corporation for the purpose of selling machines, or for the purpose of establishing an agency for their disposition in Denver.   In total disregard of this apparent limitation

of which he was advised, and of which he had presumptive notice, he negotiated with Percy and made the agreement set out in the statement.

We now come to the consideration of that agreement. According to its terms Rice bought from the McIntosh-Huntington Company the seventy-five machines therein described and gave his promissory notes for the price. He then sells to the agent Percy the machines which he has thus purchased and takes his promissory notes for the price to protect himself against the paper which he gave the company. In thus dealing he permitted the agent to do what he was not authorized to do by the terms of his appointment. It is always and universally true, that an agent to sell may not himself buy nor can another dealing with an agent thus clothed with authority to sell, himself become the purchaser and sell to the agent, and compel the principal to look to the agent for the consideration.. Such a transaction was not within the scope of Percy's actual or apparent authority. It is quite true the agreement recites that if Percy is unable to dispose of the bicycles so as to discharge his notes to Rice, then to that extent Rice is to be relieved from his liability to the McIntosh-Huntington Company on the notes which he gave on the purchase. We do not regard this limitation or condition as one which in any manner affects the rights of the McIntosh-Huntington Company or relieves Rice from his obligation to pay the paper.

There are two answers to this contention. In the first place there is nothing in the record which exhibits or tends to support the fact that Percy had any such authority. It is not naturally included within the powers granted nor will such power be implied unless the agent occupies with reference to the principal a totally different position from that in which Percy stood. He was neither the general nor the universal agent of the company, nor had he the right under his appointment, so far as proven, to make any such contract. Such authority was not expressly granted and it cannot be legally implied from the power expressly given nor inferred from

the nature of the transaction. A still stronger reason is found in the fact that this agreement does not purport to be the agreement of the McIntosh-Huntington Company. It is a contract between Percy and Rice, purely of an individual character including them only, whereto the McIntosh-Huntington Company was not made a party either by express words or by implication. The contract was not executed in the name of the company, nor was it signed by the company, nor was it signed by Percy as an agent of the corporation, nor did the signature contain words of description which in any wise tended to show that the contract was executed for or in behalf of the corporation. Under these circumstances the contract cannot be taken as the contract of the corporation.

It has been very gravely and ably urged by counsel for the appellant, that this agreement is under seal, and that this circumstance in and of itself prevents Rice from insisting that it is a contract of the corporation. It has long been a recognized doctrine in the law, that where a party has made a simple contract in his own name but on behalf of an undisclosed principal, the principal when found may be charged with the contract and sued in assumpsit on the implied promise if the agency was created prior to the execution or the agreement. This is too well settled to be now disturbed. The doctrine has not, so far as we observe, been extended to cases where the original agreement was under seal. *Briggs v. Partridge*, 64 N. Y. 357; *Clark v. Courtney*, 5 Pet. 319; *Elwell v. Shaw*, 16 Mass. 42; *Kiersted v. Railroad Co.*, 69 N. Y. 343; *Bassett v. Hawk*, 114 Pa. St. 502; Wharton on Agency & Agents, § 283; *Dayton v. Warne*, 43 N. J. Law, 659; *Ford v. Williams*, 21 How. 287.

This doctrine has been substantially recognized by the supreme court in the well considered case of *Rice v. Bush*, 16 Colo. 484. The court considers the question, cites many of the authorities hereinbefore referred to in support of it, though the case really turned on the proposition that the principal was known at the time the contract was made, and

not named nor in any manner designated in the written agreement. But the court declared their position strengthened by the fact that the agreements were under seal. As we read that case it unquestionably holds that a principal known when the agreement is made, but who is not named, nor in any manner designated or referred to in the agreement is not bound. We are quite unable to appreciate any distinction in principle between that case and the present. This case in no manner respects the purchase and sale of real property, but if it be true in the one case that a known principal who is not referred to as bound nor designated as a party might not be held when known, where the contract respects the sale of real property, we are unable to see why, even though the transaction involves only the sale of personalty, the known principal may be sued on the sealed instrument. Rice made an agreement with a known agent of a known principal, and therein agreed only with the agent. The principal is in no manner made a party to the contract. The supreme court recognizes the force of the principle and while they did not regard it as controlling, they do determine the proposition that the known principal who is not made a party to the contract may not be bound by the written agreement, a doctrine which would seem to be wholly applicable and entirely conclusive of the rights of these parties.

There is still a further reason why the plaintiff cannot escape the payment of these notes under the evidence. If we wholly disregard the agreement and determine that it is not a conclusive settlement of what their mutual rights and obligations were and are, which we do not, it would still remain true Rice could not escape liability on this commercial paper by proof of an agreement with the agent that he was not to be bound save under certain conditions and on the happening of certain events. We are quite ready to concede there is an exception to this rule which was expressed in *The Brewing Co. v. Barets*, 9 Colo. App. 341, and likewise by the supreme court in *Hurlburt v. Dusenbery et al.*, April term, 1899. These were cases where the proof tended to show

that the instrument sued on was never to take effect as a promissory note except on a contingency which never happened. There is no such proof in this case. The notes were executed and delivered to the agent, to be sent to the principal, the McIntosh-Huntington Company. Rice put his paper on the market, turned it over to the corporation which parted with the consideration by the surrender of the machines and Rice was party and privy to the sale of the machines and to their sale to the principal's agent. The corporation thus paid an ample consideration for the paper and Rice was a party to the transaction under which that consideration passed to an agent who to his knowledge had no authority to buy. He thus put it in the power of the agent to rob his principal, to appropriate the machines to his own use which he apparently did, and to deprive the principal of the fruits of the sale of the machines. Under these circumstances he is estopped to say that the McIntosh-Huntington Company suffered no loss and paid no consideration, for he was a privy to the transaction by which they lost title to the machines. He floated his paper, consented to its transmission to the company, enabled the agent to take possession and dispose of the property to their loss, and he ought not now to be heard to say that the principal must look to the agent for the price. Beyond all this, it is thoroughly well settled that these instruments and contemporaneous agreements are to be taken together and that no parol agreement may be proven which conflicts with a note which the plaintiff has put into circulation. A party to a promissory note who has put it on the market may not vary the terms of it and escape the promise by proof of parol agreements made before it was delivered. This doctrine has become a part of the settled law of commercial paper. To it there are few if any exceptions. So far as we can discover there is no evidence in this record which in any wise tends to bring the cause within any well established exception. *Gilmann v. Henry*, 53 Wis. 465; *Forsythe v. Kimball*, 91 U. S. 291; Randolph on Commercial Paper, § 1903; *Goddard v. Cutts*, 11 Me. 440; *Henshaw v.*

*Dutton,* 59 Mo. 139; *Burnes v. Scott,* 117 U. S. 582; *Clanin v. Esterly Harvesting Machine Co.,* 118 Ind. 372.

These authorities might be extended indefinitely. They are enough to illustrate the proposition which is established by all the cases wherein the matter has been considered.

The evidence which the appellee Rice introduced respecting the negotiations between himself and Percy were wholly inadmissible. We find nothing in the record which would make the agreement executed by Percy and Rice a defense to the suit on the notes nor anything therein which will enable him to escape liability thereon.

The judgment of the district court to the contrary was erroneous and it will therefore be reversed and remanded for a new trial in conformity with this opinion.

*Reversed.*