## No. 13,929.

RHODES ET AL. *v.* INDUSTRIAL COMMISSION ET AL.
(61 P. [2d] 1035)

Decided October 5, 1936. Rehearing denied November 2, 1936.

Mr. John M. Boyle, Mr. Richard McKinley, for plaintiffs in error.

Mr. Paul P. Prosser, Attorney General, Mr. Louis Schiff, Assistant, Mr. F. E. Dickerson, Mr. T. J. Morrissey, Mr. C. D. Bromley, for defendants in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

This is a Workmen's Compensation case. Plaintiffs in error are hereinafter referred to as the Trust and Rhodes, respectively, and the latter's wife as Mrs. Rhodes. Defendants in error are referred to as the Commission and Mrs. Henderson, respectively, and the latter's deceased husband as Henderson.

Henderson was killed by a rock slide while placer mining on property owned by the Trust, which carried no insurance. Mrs. Henderson filed her claim with the Commission, which found for her. The district court sustained the award and to review that judgment plaintiffs in error prosecute this writ. Their contentions here are: (1) The Trust is not a party; (2) one Hitchings, upon whose conduct as agent for the owners Mrs. Henderson relies, was not shown to be such agent; (3) no evidence brought plaintiffs in error within the provisions of section 4423, C. L. 1921, the statute here in question.

█ 1. The Trust is a common law trust, created in 1932 by Rhodes and Mrs. Rhodes. They were sole trustees and each had all the power of both. However, Rhodes was in fact the actual manager and handled the property as his own. His Chicago address and that of the Trust were the same. The Trust appeared by counsel in all proceedings above mentioned, and the claim that it was not properly made a party is raised here for the first time. If otherwise good it comes too late. *People v. Drug Co.,* 10 Colo. App. 507, 51 Pac. 1010.

█ 2. It is clear that, for present purposes, Rhodes is the Trust. It is said that Hitchings' agency was established by his own testimony, contrary to the rule that this can not be done by mere declarations of the alleged agent. But it was not. He testified to the facts from which the agency appeared. This is always permissible. *Wales v. Mower,* 44 Colo. 146, 96 Pac. 971. Under Rhodes' instructions Hitchings put up signs on the property, made agreements with many individuals and outfits to mine it, fixed the royalties payable, of which he received one-third for his services, generally supervised operating activities, and saw that operators complied with the law. Agency may be established by the conduct of the principal and the alleged agent. *Silver Mt. M. Co. v. Anderson,* 51 Colo. 298, 117 Pac. 173. We think the agency clearly established.

█ 3. If this judgment be affirmed it must be because plaintiffs in error were "conducting" the business of placer mining on the property in question within the terms of said section 4423 which, so far as applicable, reads: "Any person, company or corporation operating or engaged in or conducting any business by leasing, or contracting out any part or all of the work thereof to any lessee, sub-lessee, contractor or sub-contractor, shall * * * be construed to be and be an employer as defined in this act and shall be liable as provided in this act to pay compensation for injury or death resulting therefrom to said lessees, sub-lessees, contractors and sub-contrac-

tors and their employes, * * *." We doubt not that by this section the General Assembly intended to cover such transactions as the one before us, although, as too often happens, that intent is somewhat obscured by the dust of superfluous language. If the Trust was conducting this business it was doing so by some sort of contract, and the relation of employer and employee existed simply because the lawmakers, having full power to so define it for the purposes of the act, said so. *Industrial Com. v. Continental Inv. Co.,* 78 Colo. 399, 242 Pac. 49. Every form of lease and every variety of employment rests upon contract. The Trust says: First, Henderson was not its lessee; second, he was not its sub-contractor; third, he was not its employee. Some good reasons are presented to support each of these assertions, and Mrs. Henderson's case thus attacked piecemeal appears to be demolished. The weak point in this argument, however, is an erroneous assumption. The act is not limited to specific technical relationships. It covers every business conducted by one through the activities of another under any kind of contract.

Doubt is cast upon this conclusion by the application of our holding in *Flick v. Industrial Com.* 78 Colo. 117, 239 Pac. 1022. But because of a diversity of facts that authority is not controlling. Flick was a farmer. He had no other business. He merely permitted one Ish to take gravel from his farm. It was alleged, and the commission and the court found, that this was a lease. We held this conclusion unsupported by the evidence and reversed the judgment, saying: "Since the commission has found merely a leasing, the other factors mentioned in the statute as sufficient to charge an owner with the liabilities of an employer must be deemed to have been found in the negative * * *." Here the finding was that the owners were "operating their property upon a system of leasing or contracting all the work thereon, and that they were employers of decedent within the meaning of section 49 (said section 4423) of the compensation act." Thus "the

other facts mentioned in the statute" are not here "found in the negative," but in the affirmative, and if there is evidence to support any of them the judgment must stand.

The salient facts disclosed are: That the total extent of the Trust's placer tract (unused and useless for any other purpose) was approximately 2,300 acres; it was extensively operated prior to 1921, then lay dormant until 1933, when over fifty men were put to work on it on sections specifically defined and assigned under contracts, written and oral, for fifteen to twenty per cent royalty to the Trust. During the years 1933 and 1934 from seventy to one hundred men were engaged in placer mining on the property under agreements similar to that granted Henderson and his associates. Lists of those so engaged were furnished by Hitchings to the bank at Fairplay and these, together with royalties paid, less Hitchings' commissions, the bank transmitted to the Chicago office of the Trust. Early in 1934 written contracts were discontinued. About the middle of May of that year Henderson and his associates asked Hitchings for a tract one of them had previously worked, but were told that it had been reassigned. Another tract, covering about ten acres, was agreed upon and its exact boundaries designated. The equipment to be used and the extent of operation were also detailed and agreed to. It was further stipulated that the work must be prosecuted diligently and as Hitchings directed or he might cancel the contract. The equipment was finally all installed to Hitchings' satisfaction, and work commenced and continued with diligence until Henderson's death.

We think these facts bring the case clearly within the terms of the act in question and support the conclusion of the district court.

The judgment is accordingly affirmed.

Mr. Chief Justice Campbell, Mr. Justice Butler and Mr. Justice Holland dissent.