510 P.2d 443 (1973)
Ruth J. BUTLER, Individually and as surviving officer, director, and President of South-Gate Pancake House, Incorporated, Plaintiff-Appellee,
v.
COLORADO INTERNATIONAL PANCAKES, INC., et al., Defendants-Appellants.
No. 71-501.
Colorado Court of Appeals, Div. I.
February 14, 1973.
Rehearing Denied March 20, 1973.
Certiorari Denied June 11, 1973.
Rector & Melat, Leo W. Rector, Colorado Springs, for plaintiff-appellee.
Rodden, Cooper, Woods & Mitchell, Richard T. Paynter, Jr., Alan Woods, Denver, for defendants-appellants Etapan Corp., International Industries, Inc., and Gammapan, Inc.
Not Selected for Official Publication.
ENOCH, Judge.
Plaintiff-appellee Ruth J. Butler, individually and as officer of South-Gate Pancake House Incorporated (South-Gate), initiated this action to recover damages for an alleged breach of a sales contract. Defendants-appellants Etapan Corp., International Industries, Inc., and Gammapan, *444 Inc., will be referred to collectively as International. Defendant Colorado International Pancakes, Inc., will be referred to as CIPI.
Default judgment was entered against CIPI, and there has been no appearance by CIPI in this appeal. International's pretrial motion for summary judgment and its motion for a directed verdict at the close of plaintiff's case were denied. Trial was to a jury, and International rested without presenting any evidence. International appeals from the judgment entered on the jury's verdict for plaintiff in the amount of $30,164.56 plus interest. We affirm.
The main issue is whether there was a principal-agent relationship between International and CIPI which would make International liable to plaintiff for breach of a contract entered into between plaintiff and CIPI. International, with offices in California, is the franchiser of restaurants operated throughout the country under the name of "The International House of Pancakes." In 1961, International granted an area franchise to William Brown, Jr., for the state of Colorado and parts of two other states. Brown incorporated CIPI and assigned the area franchise to CIPI. Brown then set up another corporation known as South-Gate Pancake House Incorporated for the purpose of constructing and operating a restaurant in Colorado Springs. CIPI obtained all of the stock of South-Gate. CIPI subsequently granted a subfranchise to South-Gate.
In 1964, shortly after the South-Gate restaurant opened, plaintiff and her husband purchased all the stock of South-Gate from CIPI and took over the operation of the restaurant. The plaintiff and her husband were divorced in 1965, and, under their property settlement, plaintiff acquired all of the stock in South-Gate. Plaintiff continued to operate the restaurant under the terms of the subfranchise from CIPI until August of 1966 when plaintiff sold all the assets of South-Gate back to CIPI. Under the terms of this sale, after allowance for a cash payment to plaintiff and certain credit due CIPI, there was a sum of $30,164.56 owed by CIPI to plaintiff.
CIPI continued the operation of the Colorado Springs restaurant until August 1967. In the meantime CIPI, which was supervising or operating several other pancake restaurants in Colorado, became indebted to International in the amount of $28,000. In February 1967 International demanded and received a security agreement on the debt from CIPI covering all of CIPI's Colorado interests. CIPI failed to pay International and International foreclosed on the secured property in August 1967. Through this foreclosure International gained control of the Colorado Springs restaurant. The balance due plaintiff under the sales agreement with CIPI remained upaid.
Plaintiff claims that CIPI was the agent of International and that International is liable to plaintiff for the $30,164.56. In support of this position, plaintiff asserts that the written franchise agreement between International and CIPI did in fact and law create a principal-agent relationship between these companies. Plaintiff further contends that the circumstances under which CIPI repurchased the business from plaintiff were such that International cannot escape liability. We agree with plaintiff's latter contention which is dispositive of this case.
Plaintiff's unrebutted evidence discloses that International did not want a woman holding a franchise and that International directed CIPI to repurchase the business from plaintiff. International instructed CIPI that, in order to induce plaintiff to sell out, CIPI should inspect plaintiff's premises and operation daily, if necessary, and send plaintiff "7-day termination letters," as provided for in the franchise agreement, to the point that plaintiff would become so harassed that she would be willing to sell out. CIPI, through its officers, followed these directions and as a result repurchased the business from plaintiff. Plaintiff was not advised at the time of *445 the repurchase agreement that CIPI was in bad financial circumstances.

I.
International alleges that there was insufficient evidence to establish any agency relationship between International and CIPI. We do not agree. It is unnecessary to determine whether the written document constituting the franchise agreement itself created any principal-agent relationship. We need only address ourselves to the question of whether CIPI acted as agent for International in the repurchase of the South-Gate restaurant.
An agent is one who acts for or in place of another by authority from him. Pouppirt v. Greenwood, 48 Colo. 405, 110 P. 195. The evidence is quite clear that International wanted the franchise repurchased from plaintiff for its own benefit. International not only specifically instructed CIPI to "buy back" plaintiff's subfranchise but also instructed CIPI as to the method for accomplishing that objective. That method consisted of sustained harassment until plaintiff was willing to acquiesce in despair. CIPI carried out International's plan while CIPI itself obviously was in no financial position to pay plaintiff. International was the only party between the two that was in a position to benefit from the transaction. International, by its involvement in this repurchase transaction, clearly demonstrated the existence of an agency relationship irrespective of any franchise agreement. Agency may be established by the conduct of the principal and the agent. Rhodes v. Industrial Commission, 99 Colo. 271, 61 P.2d 1035. In Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, it was held that although a franchise agreement recites that the relationship of principal and agent is not created, the law will look at the conduct and factual relationship rather than the intent or words of the agreement.
International cites McIntosh-Huntington Co. v. Rice, 13 Colo.App. 393, 58 P. 358, a case in which the court held that the principal was not bound by a written contract that was executed by an agent in the agent's own name and was beyond the scope of the agent's authority. Further, it was not shown in the execution clause that the contract was for or on behalf of such principal. Although we agree with the results of McIntosh-Huntington, under its particular circumstances the facts in the case at hand show that CIPI was acting within the scope of its authority by following the specific direction of International. That authority can be created by written or spoken words or conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal wants him to act on the principal's account. System Investment Corp. v. Montview Acceptance Corp., 355 F.2d 463 (10th Cir. 1966); Restatement (Second) of Agency § 26 (1958).

II.
International contends that the question of whether or not an agency exists is a question of law to be determined by the court and that it was error to have submitted this issue to the jury.
Ordinarily the question of the existence of an agency relationship is for the jury. Marron v. Helmecke, 100 Colo. 364, 67 P.2d 1034. Where, however, there is no dispute or conflict in the facts, which are alleged to have created the agency, the court should determine the question as a matter of law. Smith v. Davis, 67 Colo. 128, 186 P. 519; Lester v. Snyder, 12 Colo.App. 351, 55 P. 613. Application of these rules depends entirely upon the facts and evidence of each particular case.
In the case at hand, International is in no position to complain of the court's ruling. Assuming International's position was valid in that the existence of an agency relationship was a question of law for the court to determine, the result is nevertheless the same. Plaintiff's unrebutted evidence of this agency relationship is substantial and would not have supported a determination by the court that no agency existed.

*446 III.
In its final allegation of error International contends that the court failed in its duty to fully and adequately instruct the jury on every issue of the case.
International tendered only one instruction. This instruction concerned the federal law relative to trademarks and was properly refused by the court as it was not supported by the evidence and was not necessary for a proper consideration of the issues submitted to the jury. It is alleged that the court failed to instruct properly on the law of agency and damages. We have considered all of the instructions in light of the evidence and find that, read together as a whole, they accurately reflect the applicable law of this case.
Judgment affirmed.
COYTE and SMITH, JJ., concur.