Richard E. SHRIVER and Kathleen L. Shriver, Plaintiffs-Appellees,

and

Re/Max Suburban, Inc., a Colorado corporation, Plaintiff-Appellee and Cross-Appellant,

v.

Charles W. CARTER and Patsy R. Carter, Defendants-Appellants and Cross-Appellees.

No. 80CA0222.

Colorado Court of Appeals, Div. II.

June 17, 1982.

Rehearing Denied July 15, 1982.

Certiorari Denied Sept. 20, 1982.

Sims & Boster, Michael D. Boster, Denver, for plaintiffs-appellees.

William Litvak, Denver, for plaintiff-appellee and cross-appellant.

Quiat, Bucholtz, Bull & Laff, P. C., James C. Bull, Denver, for defendants-appellants and cross-appellees.

VAN CISE, Judge.

In this action, plaintiffs Richard E. and Kathleen L. Shriver (the buyers) sought from defendants Charles W. and Patsy R. Carter (the sellers) specific performance and consequential damages arising out of the sellers' breach of a contract for purchase and sale of a duplex. Re/Max Suburban, Inc., (the broker) sued for a commission from the sellers, which claim was dismissed prior to trial and has not been appealed. The sellers counterclaimed against the broker for compensatory and punitive damages based on fraud and breach of fiduciary duty.

The court ordered specific performance of the contract and entered a $5,000 judgment against the broker and in favor of the sell-

ers for the broker's breach of fiduciary duty. No money damages were awarded the buyers against the sellers, and no punitive damages were awarded the sellers against the broker. The sellers appeal the judgment for specific performance and the amount of the damages, both compensatory and punitive, awarded on their counterclaim. The broker appeals the $5,000 judgment entered against it. We affirm in part and reverse in part.

After trial to the court, it made the following findings, which are supported by the evidence. Roland B. Wolfe, a real estate salesman for the plaintiff broker, recently had sold properties for both the buyers and the sellers. In July 1976, as selling agent, he had sold the present duplex to the sellers for $70,000. In February 1977, the buyers contacted Wolfe to find for them a duplex in the $65,000 to $85,000 range. Wolfe then contacted the sellers and indicated to them that he thought he could make a $10,000 profit for them by selling their duplex for $79,900, which he stated was the then value of the property. The sellers signed an exclusive listing contract with the broker at $79,900.

Wolfe showed the property to the buyers. On his advice, they submitted an offer on March 5 in the form of a specific performance contract, signed by them, calling for a price of $79,900. One of the sellers signed the contract on March 10. The other seller told Wolfe she did not want to enter into any agreement unless she would be able to move out of the duplex and be in a newly purchased home by April 23. Accordingly, a provision was put into the contract calling for possession to be pursuant to negotiation and separate rent-back agreement.

On March 15, the sellers made an offer on a house. That same day, the other seller signed the contract for sale of the duplex. A few days later, the offer for the house was turned down. At that point, one of the sellers told Wolfe that they were not going through with the sale of the duplex. Wolfe called one of the buyers and asked her if they wanted out of the contract; he did not tell her that the sellers were repudiating or that there were any troubles.

On the morning of the day set in the contract for closing, the sellers received a letter from the broker, demanding that they attend the closing and warning them of possible litigation for commissions and specific performance if they did not comply with the contract. On receipt of this letter, the sellers notified the broker that they had repudiated the contract and would not attend the closing.

The buyers appeared at the closing with the required funds. The sellers did not appear.

The court found that Wolfe had told the sellers that he was not the agent for the buyers but that the buyers had been previous customers of his and that he had done business with them before. It then found that Wolfe was the agent for the sellers and not the buyers. Concluding that the contract was binding and that the buyers were not at fault, the court granted specific performance. No evidence was presented as to any consequential damages to the buyers, so none were awarded.

Based on *Hickam v. Colorado Real Estate Commission,* 36 Colo.App. 76, 534 P.2d 1220 (1975), the court determined that Wolfe (and, through him, the broker) had violated his fiduciary duty to make a full and fair disclosure to his principal by: (1) not communicating the range within which he knew the buyers were willing to deal (up to $85,000 for a duplex), and (2) not communicating to the buyers, on behalf of the sellers, that the sellers had repudiated the contract. Accordingly, the court entered judgment in their favor and against the broker for $5,000.

I.

On appeal, the sellers contend that Wolfe was a double agent, representing both sides of the transaction, and that his conduct was imputable to the buyer. They assert that

the court erred in finding that he was agent only for the sellers and not for the buyers. We do not agree.

An "agent" is one who acts for or in place of another by authority from him. *Pouppirt v. Greenwood,* 48 Colo. 405, 110 P. 195 (1910). Agency may be established by the conduct of the alleged principal and agent. *Rhodes v. Industrial Commission,* 99 Colo. 271, 61 P.2d 1035 (1936). Ordinarily, the question of the existence of an agency relationship is for the fact finder—here the trial court. *Marron v. Helmecke,* 100 Colo. 364, 67 P.2d 1034 (1937).

Here, there was no evidence that there was any contractual relationship between Wolfe (or his broker) and the buyers, that Wolfe had any authority to act or had attempted to exercise any authority to act on their behalf, that the buyers had vested any authority in him, or that Wolfe was entitled to receive any compensation from them. Wolfe was contacted by them only as potential buyers seeking a suitable duplex. His dealings with them were in that capacity. The court's finding, therefore, was supported by the evidence and will not be disturbed on review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

As he was not the buyers' agent, Wolfe's conduct was not imputable to them. Therefore, contrary to the sellers' contention, the sellers are bound by the contract signed by them, and the buyers are entitled to the benefit of their bargain—here specific performance.

## II.

The sellers further contend that Wolfe's conduct involved breaches of Wolfe's fiduciary duties to them in addition to those listed by the court in its findings. However, even if other breaches should have been added to the list, such additional findings would not affect the already determined liability of the broker or the amount of damages to which the sellers are entitled,

as considered below. Therefore, the error, if any, is harmless.

## III.

The sellers next contend that the court erred in its determination of the amount of compensatory damages to which they are entitled. They claim that the $5,000 awarded was minimal and did not fully compensate them for their losses. They argue that the court should have awarded them the difference between the contract price ($79,900) and the value of the property at the time of trial. Conversely, the broker in its cross-appeal argues that no damages should have been awarded. We agree with the broker.

An agent is liable to his principal for the full amount of the principal's loss resulting from any breach of duty. *White v. Brock,* 41 Colo.App. 156, 584 P.2d 1224 (1978). Had the price been at the top of the range ($85,000) at which the buyers *might* have been willing to deal, the sellers would have made a $15,000 gross profit over their $70,000 cost—but they would have been liable for a 7% commission figured on the selling price of $85,000, or $5,950. This would leave them a net profit of $9,050. Here, with the $79,900 sale price, they realize a $9,900 gross profit, and, since the broker's commission claim was dismissed, that gross is also the net profit. Therefore, the sellers have not been damaged by Wolfe's failure to communicate the range within which the buyers were willing to deal. There is no evidentiary basis for the $5,000 damage award against the broker in favor of the sellers.

The situation is different but the result is the same in considering Wolfe's failure to tell the buyers that the sellers were not going through with the deal. At a meeting between the parties a few days after the scheduled closing date, according to Mr. Carter (one of the sellers), one of the buyers told him that "if he had known about all this mess earlier at that time he would be

-happy to have cancelled, had he known earlier, but things had gone too far." The trial court did not accept that testimony at full value. Instead, it found that had the buyers known, "they might have let them out of the contract." Since weight and credibility to be afforded to testimony is for the trier of the facts, *Vigil v. Pine,* 176 Colo. 384, 490 P.2d 934 (1971), the trial court's interpretation and finding is binding on appeal. Absent a finding that the buyers would have consented to a rescission—which was not the finding here—there was no basis for awarding any damages based on the failure of the broker to communicate the desires of the sellers. Therefore, the denial of compensatory damages for this breach of duty was proper.

## IV.

Since the judgment for compensatory damages is reversed, there is no basis for any award of punitive damages to sellers. Section 13–21–102, C.R.S. 1973; *Wagner v. Dan Unfug Motors, Inc.,* 35 Colo.App. 102, 529 P.2d 656 (1974).

## V.

We see no merit in the other contentions of the sellers.

The judgment for specific performance on the buyers' complaint is affirmed, and the $5,000 judgment against the broker on the sellers' counterclaim is reversed.

BERMAN and KELLY, JJ., concur.