David K. RICHARDS,
Plaintiff–Appellee,

v.

ATTORNEYS' TITLE GUARANTY
FUND, INC., Defendant–Appellant,

H. Ray Christman and Platte Valley
Bank, Defendants.

No. 85–2656.

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1989.

Rehearing Denied March 22, 1989.

Steven J. Merker of Davis, Graham & Stubbs, Denver, Colo., for plaintiff-appellee.

Mark R. Davis (John A. Criswell of Branney, Hillyard & Criswell, Englewood, Colo., with him, on the briefs), of Wood, Ris & Hames, P.C., Denver, Colo., for defendant-appellant.

Before SEYMOUR, McWILLIAMS, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff Richards brought a civil action based upon diversity of citizenship against defendant, Attorneys' Title Guaranty Fund, Inc. (Attorneys' Title), a title insurance company. 28 U.S.C. § 1332 (1966). Richards sought to recover from Attorneys' Title $430,000 in funds that the president

of Centennial Escrow Services, Inc. (Centennial) embezzled from Centennial's trust account. Richards alleged Centennial was an agent of Attorneys' Title and Attorneys' Title should be held responsible for the intentional conversion by Centennial's president. The jury returned a verdict against Attorneys' Title.

Attorneys' Title appeals, alleging the district court improperly instructed the jury because: (1) the general liability instruction based on the *Restatement (Second) of Agency* § 261 (1958) was not the law of Colorado; (2) the court improperly refused an instruction on the element of reliance; and, (3) the instruction defining agency did not contain the necessary element of control.

We find the district court properly instructed the jury on the law and AFFIRM the district court's judgment against Attorneys' Title.

Richards owned thirteen "7–Eleven" stores which he leased to the Southland Corporation. He was approached by a real estate agent regarding sale of the stores to Snyder. Richards negotiated a sale with Snyder. Richards agreed to provide title insurance. Richards then contacted the Attorneys' Title office in Utah and requested they issue title insurance on the properties. Attorneys' Title referred him to their Colorado office to prepare the title insurance on the three properties located in Colorado. Richards requested that the Colorado Attorneys' Title office prepare the title insurance policies on the three properties, asked if that office could handle the closing on the entire transaction, and asked if they could hold the sale proceeds check until all transaction documents were properly recorded. Attorneys' Title agreed to perform these services.

The closing date was postponed from December 10, 1982, to December 30, 1982. Richards learned the Attorneys' Title office manager would be out of town on December 30. An Attorneys' Title employee told Richards that Walter, an employee of Centennial, would perform the closing. At the closing, Walter refused to release the sales proceeds check to Richards before the

transactions documents were recorded. The buyer, Snyder, and Richards' attorney, in fact agreed to reissue the sales proceeds check to Centennial to be held in Centennial's escrow account until the transaction documents were recorded.

Walter took the sales proceeds check for $430,000 to Centennial's office and prepared a deposit slip to the escrow account. She then left the check and deposit slip for Centennial's president, Marshall, to deposit. Marshall deposited the check in Centennial's trust account at Platte Valley Bank on January 3, 1983. On January 5, 1983, Marshall asked the bank to release the $430,000 to him in cash, which the bank was unable to do because its cash on hand did not amount to $430,000. Marshall then instructed the bank to wire transfer the $430,000 to United Bank of Denver where Marshall received the money in cash and left the state.

Richards contacted Walter at Centennial and requested transfer of the sales proceeds because all the transaction documents had been properly recorded. Walter then learned that Centennial's president had taken the proceeds and she informed Richards.

Richards brought this diversity suit to recover the $430,000 against Attorneys' Title and Platte Valley Bank. 28 U.S.C. § 1332 (1966). The jury returned a verdict against both defendants. Each defendant has appealed. Our opinion on Platte Valley Bank's appeal is reported at *Richards v. Platte Valley Bank*, 866 F.2d 1576 (10th Cir.1988). In diversity cases, the federal court must apply the law of the forum state, in this case, Colorado. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Hopper*, 751 F.2d 329 (10th Cir.1984).

I.

Attorneys' Title asserts the trial court improperly instructed the jury on the theory of liability based upon § 261 of the *Restatement (Second) of Agency* (1958) because this section is not the law of Colora-

do. We have been unable to find, and neither party has cited us to a Colorado case which has discussed § 261. Our task is to predict whether the Colorado Supreme Court would apply this provision in a case like the one presented to this court. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984).

The district court instructed the jury on the liability of Attorneys' Title stating:

> In order for the plaintiff, David K. Richards, to recover from the Defendant Attorneys' Title Guaranty Fund on his claim that Attorneys' Title Guaranty Fund is responsible for the theft of the escrow proceeds by Duane Marshall, you must find—you must find all of the following have been proved by a preponderance of the evidence.
>
> (1) In connection with the sale of the 13 7–Eleven stores and the escrow of the funds, Centennial Escrow Services, Inc., was an agent of Attorneys' Title Guaranty Fund;
>
> (2) Attorneys' Title Guaranty Fund put Centennial Escrow Services in a position that permitted its president, Duane Marshall, to commit the theft of the $430,000;
>
> (3) At the time of the theft, Centennial Escrow Services was apparently acting within its authority as an agent of Attorneys' Title.
>
> If you find any of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for the defendant. On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict must be for the plaintiff.

This instruction is based on the *Restatement (Second) of Agency* § 261. This section states:

> A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

Attorneys' Title objected to this instruction as being an inappropriate theory of law.

On appeal, Attorneys' Title asserts § 261 is not the law of Colorado because this section improperly imposes liability upon a principal solely upon an agent's intentional misrepresentation not authorized or consented to by the principal. Attorneys' Title contends this instruction is contrary to the holdings in *Schuette v. Winternitz*, 498 P.2d 1183 (Colo.App.1972) (not selected for official publication); and *Erisman v. McCarty*, 77 Colo. 289, 236 P. 777 (1925). We do not find this argument persuasive.

The general rule that a principal is liable for the torts of his agent is not grounded on agency principles, but rather the maxim of *"respondeat superior." Simpson v. Townsley*, 283 F.2d 743, 746 (10th Cir.1960) (applying Kansas law); *Dyer v. Johnson*, 757 P.2d 178, 181 (Colo.App.1988). Liability is determined by considering, from a factual standpoint, whether the tortious act was done while the employee, whether an agent or servant, was acting within the scope of employment. *Id.* at 180; *Crosswaith v. Thomason*, 95 Colo. 240, 35 P.2d 849 (1934). The principal's knowledge of the agent's tort is not a necessary element of liability. *See Stockwell v. United States*, 80 U.S. 531, 546, 20 L.Ed. 491 (1871).

In *Gilmore v. Constitution Life Ins. Co.*, 502 F.2d 1344 (10th Cir.1974), this court construed Colorado law and held a principal liable for the fraudulent acts of its agent who was acting within the scope of his apparent authority. The court distinguished the holding in *Schuette*, which denied a principal's liability without proof of consent or knowledge of the agent's misrepresentations, because that case did not discuss the agent's apparent authority to perpetrate the alleged fraud. Likewise *Erisman* is distinguishable. The Colorado Court of Appeals has also recognized this exception for an agent's false representations made with apparent authority. *See Dyer*, 757 P.2d at 180.

After hearing each party's arguments, the district judge concluded the instruction based on § 261 was the correct law. This instruction based on § 261 is consistent with the legal principle recognized by the courts of Colorado that, when

one of two innocent persons must suffer from the acts of a third, he must suffer who put it in the power of the wrongdoer to inflict the injury. *Bemel Assocs., Inc. v. Brown,* 164 Colo. 414, 435 P.2d 407, 411 (1968) (Sutton, J., dissenting) (citing *Burck v. Hubbard,* 104 Colo. 83, 88 P.2d 955, 957–58 (1939)); *see also Gordon v. Pettingill,* 105 Colo. 214, 96 P.2d 416, 418 (1939). This court has applied § 261 to principal-agent liability cases arising in Colorado. *See Thomas v. Colorado Trust Deed Funds, Inc.,* 366 F.2d 140, 143 (10th Cir. 1966); *L.J. Dreiling Motor Co. v. Peugeot Motors,* 605 F.Supp. 597, 610–11 (D.Colo. 1985), *aff'd,* 850 F.2d 1373 (10th Cir.1988). We agree with the district judge's instruction based on § 261. We believe the Colorado Supreme Court would apply § 261 if placed in the position of the district court in this case.

Attorneys' Title next contends if § 261 is an accurate statement of the law of Colorado, the district court improperly substituted "theft" for "fraud" as one of the elements of proof. Attorneys' Title asserts § 261 was not intended to make a principal liable for every theft committed by a non-employee agent. Attorneys' Title argues that liability attaches to the principal only by the agent's misrepresentation or fraud and not simply by the agent's theft.

We have not been referred to, nor do we find, any cases where "theft" has been substituted for "fraud" in an instruction based on § 261. However, there are several cases in which § 261 has been applied to thefts. *See, Stone & Webster Eng'g Corp. v. Hamilton Nat'l Bank,* 199 F.2d 127, 132 (6th Cir.1952) (business liable for employee's theft from bank, where business placed employee in position to commit theft); *First Nat'l Bank v. United States,* 653 F.Supp. 1312, 1320 (N.D. Ill.1987) (bank is liable to third party because its choice of agent exposed third party to loss); *Lucas v. Liggett & Myers Tobacco Co.,* 50 Haw. 477, 442 P.2d 460, 463 (1968) (§ 261 applied to theft of cigarettes); *Draemel v. Rufenacht, Bromagen & Hertz, Inc.,* 223 Neb. 645, 392 N.W.2d 759 (1986) (§ 261 applied to conversion by agent of commodities firm); *but see Lou–Con, Inc. v. Gulf Bldg. Servs., Inc.,* 287 So.2d 192 (La.App.1973)

(while § 261 may impose liability on a principal for an agent's theft, it will not impose liability for arson which is not reasonably foreseeable by the principal); *O'Malley v. Putnam Safe Deposit Vaults Inc.,* 17 Mass.App.Ct. 332, 458 N.E.2d 752 (1983) (claim based on § 261 against principal for agent's conversion of gold coins dismissed for failure to prove agent acted within apparent authority). Section 261 has also been applied as a basis to impose liability on a principal for an agent's offensive bodily contact. *Bowman v. Home Life Ins. Co.,* 243 F.2d 331, 334 (3d Cir.1957).

Attorneys' Title cites in support of its proposition that an employer will not be liable for the thefts of its employees, *Roth v. First Nat'l State Bank,* 169 N.J.Super. 280, 404 A.2d 1182 (1979). In *Roth,* a customer brought suit against a bank to recover money he lost in a robbery because a bank teller disclosed the customer's banking practices to a third party. *Roth* is not persuasive because the basis for the principal's liability was not § 261, but rather vicarious liability based upon *respondeat superior.* The court found no liability because the employee's tortious acts were outside the scope of her employment. In this case the jury was instructed and found Centennial "was apparently acting within its authority as an agent of Attorney's Title" at the time of the theft.

■ The trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented. *United States v. Pack,* 773 F.2d 261, 267 (10th Cir.1985); *United States v. James,* 576 F.2d 223, 226 (9th Cir.1978). A party has no vested interest in any particular form of instructions. The language of the instructions is for the court to determine. *United States v. Garcia–Rodriguez,* 558 F.2d 956, 965 (9th Cir. 1977), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 802 (1978); *see also Tucker v. United States,* 151 U.S. 164, 170, 14 S.Ct. 299, 301, 38 L.Ed. 112 (1894). Challenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion. *James,* 576 F.2d at 227, citing *United States v. Park,* 421 U.S. 658, 673–76, 95 S.Ct. 1903, 1912–14, 44 L.Ed.2d 489

(1975). The principal's liability under § 261 is not based on the nature of the agent's act, i.e., whether it is a misrepresentation or a theft, but rather is based upon the principal placing the agent in the position to interact with the third party who is harmed. The agent is acting in the place of the principal. The district court's substitution of "theft" for "fraud" in the instruction based on § 261 was not an abuse of discretion.

Attorneys' Title next asserts the trial court erred in failing to direct the verdict because Richards failed to prove Attorneys' Title placed Centennial in a position to harm Richards. Attorneys' Title contends Centennial was given possession of the down payment by the agreement of Richards and the property purchaser, Snyder, and not by any action of Attorneys' Title.

The applicable standard of review in passing on the propriety of a motion for directed verdict is the same as that used by the trial court. *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir. 1967). We must conduct a *de novo* review of the evidence and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. A scintilla of evidence is not sufficient to justify submitting a case to the jury, *id.*, but a verdict may not be directed unless the evidence points all one way and is susceptible of no reasonable inferences that would sustain the position of the party against whom the motion is made. *Ewers v. Board of County Comm'rs*, 802 F.2d 1242, 1247 (10th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988).

Attorneys' Title's argument fails to consider the following evidence presented by Richards. Richards contacted Attorneys' Title and requested they issue title policies on the three Colorado properties, perform the closing on this transaction, and hold the proceeds until all documents were recorded. Attorneys' Title agreed. On the day of the closing an employee of Attorneys' Title told Richards that Walter, an employee of Centennial, would perform the closing. Closing services generally include holding the proceeds of the sale until all the documents are recorded. There is sufficient evidence in the record to support a conclusion by the jury that Centennial was acting as Attorneys' Title's agent in performing the closing and that Centennial's authority included holding the proceeds. The authority to hold the proceeds included authority to accept a check made payable to Centennial for placement in its escrow account, and later to disburse the fee to the real estate agent and the net proceeds to the property seller. We conclude the district court did not err in denying Attorneys' Title's motion for directed verdict.

## II.

The next issue Attorneys' Title raises is the district court's refusal of its tendered instruction on the issue of reliance. Attorneys' Title offered tendered instruction No. 15 [1] which outlines the elements of liability of Attorneys' Title under § 261. It is substantially the same as the instruction given by the district court. *Supra*, at 1572. Tendered instruction No. 15 contains the added element that: "Dave Richards relied

---

1. Attorneys' Title tendered instruction No. 15 states:

In order for the Plaintiff, David K. Richards, to recover from the Defendant, Attorneys' Title Guaranty Fund, Inc., on his claim that Attorneys' Title Guaranty Fund is responsible for the theft of the escrow proceeds by Duane Marshall, you must find all of the following have been proved by a preponderance of the evidence:

1. Centennial Escrow was the agent for Attorneys' Title.
2. At the time of the theft, Duane Marshall was an employee of Centennial Escrow Services, Inc.

3. In stealing the funds, Mr. Marshall was acting in the course and scope of his employment for Centennial Escrow Services, Inc.
4. Attorneys' Title Guaranty Fund placed Centennial Escrow in a position which enabled Duane Marshall to steal the funds.
5. At the time of the theft Centennial Escrow was apparently acting within its authority as agent of Attorneys' Title.
6. Dave Richards relied upon the fact Centennial Escrow was acting within its apparent authority for Attorneys' Title.

If you find that any one of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for

upon the fact Centennial Escrow was acting within its apparent authority for Attorneys' Title." Attorneys' Title asserts the failure of the district court to give tendered instruction No. 15 removed the issue of reliance from the jury's consideration.

The admission or exclusion of a jury instruction is within the discretion of the trial court. *United States v. Zang,* 703 F.2d 1186, 1196 (10th Cir.1982), *cert. denied,* 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983). The sufficiency of the instructions is not determined by giving or not giving particular instructions, but rather by viewing the instructions as a whole. *United States v. Beitscher,* 467 F.2d 269, 273 (10th Cir.1972). Generally, the court satisfies its duty by giving instructions that sufficiently cover the case and that are correct. *United States v. Gurule,* 437 F.2d 239, 242 (10th Cir.1970), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971); *United States v. Burns,* 624 F.2d 95, 105 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

■ Attorneys' Title asserts apparent authority requires (1) the principal make statements or act in a manner to make a third party believe the agent is authorized to act and, (2) the third party relies on the apparent authority to its detriment. The district court's instruction on apparent authority is taken from the standard Colorado Jury Instructions 2d Civil 7:14 (1980).[2] In order to establish apparent authority, the principal's words or conduct must cause another reasonably to believe that the agent is authorized to act. *See Kuehn v. Kuehn,* 642 P.2d 524 (Colo.App.1981); *Russell v. First American Mtg. Co.,* 39 Colo. App. 360, 565 P.2d 972, 975 (1977); *Zambruk v. Perlmutter 3rd Generation Builders, Inc.,* 32 Colo.App. 276, 510 P.2d 472, 475 (1973); *but cf. Bemel,* 435 P.2d at 409–10 (to establish agency by estoppel reliance must be proven). Reliance is defined as a belief which motivates an act. *See* Colorado Jury Instructions 2d Civil 19:7 (1980).[3] The reasonable belief element of reliance is contained in the district court's instruction on apparent authority. The jury's determination that Centennial had apparent authority to act as Attorneys' Title's agent is also a finding that Richards reasonably believed Centennial was authorized to act. After viewing the instructions as a whole, we find the district court's refusal to include the reliance element in the general liability instruction based on § 261 is not error because the court's instruction on apparent authority properly placed the issue before the jury.

■ Attorneys' Title also asserts Richards did not rely on Centennial's authority to receive the sale proceeds in escrow because the closing instructions prepared by Richards did not discuss escrow of the proceeds. We find no merit to this argument because it fails to recognize the general rule that an agent's instructions come from the principal and not from the third party dealing with the agent. *Bank of British N. Am. v. Cooper,* 137 U.S. 473, 478, 11 S.Ct. 160, 161, 34 L.Ed. 759 (1890).

### III.

■ Attorneys' Title next asserts the district court improperly instructed the jury on the elements of an agency relationship because the instruction did not include the element that an agent is "subject to the control of the principal."

Attorneys' Title concedes the instruction the court gave is the standard Colorado

---

the Defendant, Attorneys' Title Guaranty Fund, Inc.

On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict must be for the Plaintiff, unless you should also find that Duane Marshall was also the agent for David Richards in holding the escrow funds, in which event your verdict must be for the Defendant.

2. Instruction 7:14 on apparent authority states:

When a principal by his words or conduct has caused another reasonably to believe that the principal has authorized his agent to take certain action on the principal's behalf, though in fact the principal may not have done so, such words or conduct constitute apparent authority, and as to the other person is the same as if the principal had authorized such action.

3. Instruction 19:7 defines reliance as:

The plaintiff relied on the claimed representation if, believing it to be true, he took action he otherwise would not have taken, or decided against taking action he otherwise would have taken.

jury instruction defining agency.[4] "Control" is not an element in this instruction. This instruction is based on the Colorado Supreme Court's holding in *Pouppirt v. Greenwood,* 48 Colo. 405, 110 P. 195, 196 (1910). This instruction has been cited with approval by the Colorado Court of Appeals in *Cheney v. Hailey,* 686 P.2d 808 (Colo. App.1984). *See also Shriver v. Carter,* 651 P.2d 436 (Colo.App.1982). Attorneys' Title has failed to cite any cases in support of its theory that in Colorado a court's instruction defining agency must discuss the element of "control." We hold the district court did not err in refusing to instruct the jury that an agency relationship is based upon control. The instruction given sufficiently defines "agency" and is correct.

### IV.

We conclude the district court properly instructed the jury based on § 261. The court did not err in refusing Attorneys' Title's instructions on "reliance" and "control." The district court's judgment is AFFIRMED.

---

**4.** Colorado Jury Instructions 2d Civil 7:3 AGENCY reads:

An agency is created by an agreement, written or oral, express or implied, by which the persons agree that one of them is to act for, or in the place of, the other. The person who agrees to act for another is called the agent, and the other is called the principal.